ELSIE B. FETTERMAN *v.* UNIVERSITY OF CONNECTICUT ET AL.
(11333)

HEALEY, PARSKEY, SHEA, GRILLO and MENT, Js.

Argued December 9, 1983—decision released April 3, 1984

*Louis M. Winer,* with whom, on the brief, was *Susan L. Gross,* for the appellant (plaintiff).

*Paul M. Shapiro,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Kenneth G. Williams,* for the appellees (named defendant et al.).

*Joel M. Ellis,* with whom, on the brief, was *William S. Zeman,* for the appellee (defendant University of Connecticut Chapter of the American Association of University Professors).

GRILLO, J. The plaintiff, Elsie B. Fetterman, a former tenured professor at the University of Connecticut (hereinafter UConn), brought this action against UConn, the members of its board of trustees, certain officials at UConn, the members of the state employees' retirement commission, and the UConn chapter of the American Association of University Professors (hereinafter AAUP). She sought damages and declaratory relief for actions which she claims resulted in loss of salary, fringe benefits, pay for accumulated vacation and sick leave, and past and future retirement benefits. The trial court, *Corrigan, J.,* granted the defendants' motions to dismiss on the ground that the court lacked subject matter jurisdiction since the plaintiff had failed to pursue and exhaust her administrative remedies prior to commencing the action. It is from this judgment that the plaintiff appeals.

The plaintiff's second amended complaint alleges the following facts: The plaintiff was a tenured professor at UConn and was a member of the AAUP at UConn from September 1, 1966, through the 1978-79 academic year. By 1979, she had become eligible for voluntary retirement under a state retirement plan. On March 18, 1979, the plaintiff accepted a position at the University of Massachusetts (hereinafter UMass) which represented a substantial professional advancement. In April of 1979, she sent a letter of resignation to UConn requesting that her date of resignation and retirement

be December 31, 1979. She also requested permission to begin using 180 days of accumulated vacation and sick leave at UConn and to continue on the active payroll until the effective date of her retirement. Upon learning that the plaintiff was on the payroll of two universities at the same time, UConn began in June of 1979 to withhold the plaintiff's paychecks, keeping them in escrow pending the resolution of the matter. On November 1, 1979, the plaintiff was retired. However, since she was classified as an "eleven-month appointment" rather than a "nine-month appointment,"[1] she was denied accrued vacation or sick leave and credited with twelve years, six months of employment rather than thirteen years, two months.

The plaintiff claims that while she was in the process of moving from her position at UConn to her new position at UMass, and while she continued to hold her tenured appointment at UConn and to render the services required of her there, her salary was cut off prematurely, and that she was dismissed without requisite hearings and in violation of several state and federal constitutional protections. This dismissal resulted in both immediate losses and prospective losses. The immediate losses claimed are the loss of salary from June, 1979, through December, 1979, loss of fringe benefits during that period, and loss of pay for accumulated vacation and sick leave. The prospective losses relate to retirement income, because those factors on which retirement benefits are based were shortened: the date of retirement, the years of service and the average annual regular salary for the three highest-

---

[1] Paragraph 37 of count six described this "dual system of appointments, to wit: 'nine-month appointments' and 'eleven-month appointments'; with substantial differences in compensation and other employment benefits, including permitting nine-month appointees to accrue unused vacation and sick leave days and to receive equivalent salaries and compensation for serving only nine-months per year while eleven-month appointees were not permitted to accrue vacation and sick leave days."

paid years of state service, with the resulting reduction of benefits to continue for the remainder of the plaintiff's life. The plaintiff sought the following relief under the Connecticut Declaratory Judgment Act; General Statutes § 52-29; and the federal Civil Rights Act of 1871; 42 U.S.C. §§ 1983, 1985 and 1988;[2] as to

[2] "[General Statutes] Sec. 52-29. SUPERIOR COURT MAY DECLARE RIGHTS AND LEGAL RELATIONS. The superior court shall have power, in any action or proceeding to declare rights and other legal relations on request for such declaration whether or not further relief is or could be claimed, and such declaration shall have the force of a final judgment. The judges of the superior court shall have power to make such orders and rules as they may deem necessary or advisable to carry into effect the provisions of this section."

"[42 U.S.C.] § 1983. CIVIL ACTION FOR DEPRIVATION OF RIGHTS.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

"§ 1985. CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS.

\* \* \*

"(3) DEPRIVING PERSONS OF RIGHTS OR PRIVILEGES If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or

the defendants named in their official capacities only (including UConn, members of its board of trustees, and members of the state employees retirement commission), declarations of the lawful dates of the plaintiff's retirement, her term of state service, and her removal from the state payroll, as well as a declaration that the bases on which actions were taken to stop the plaintiff's salary were unconstitutional and invalid; as to the individual defendants, five university officials who acted to stop the plaintiff's salary and who are named as defendants both in their individual and official capacities, compensatory and exemplary damages, together with costs and attorney's fees, as a result of infringements of state and federal constitutional protections; and as to the defendant union AAUP, the collective bargaining unit for the faculty at UConn, compensatory and exemplary damages substantially similar to those sought from the individual defendants.

---

deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

"§ 1988. PROCEEDINGS IN VINDICATION OF CIVIL RIGHTS; ATTORNEY'S FEES

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title 'CIVIL RIGHTS,' and of Title 'CRIMES,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The plaintiff presents the following issues in this appeal: (1) whether the trial court erred by requiring the plaintiff to pursue and exhaust her administrative remedies as a condition to subject matter jurisdiction, (2) whether the trial court erred in failing to construe pertinent provisions of the Trustees' Rules and the collective bargaining agreements to determine whether the defendants were required to institute hearings before suspending the plaintiff's salary, and (3) whether the trial court erred in excluding affidavits offered by the plaintiff at the hearing on the motions to dismiss.

In a counterstatement of issues and alternative grounds upon which the judgment could be affirmed, the defendants submit that the trial court's dismissal was proper since (1) the plaintiff did not exhaust the contractual remedies available to her, (2) the plaintiff did not exhaust the administrative remedies available to her under UConn's laws and bylaws, (3) a declaratory judgment could not be rendered because all persons having an interest were not given reasonable notice, and (4) sovereign immunity barred an award for damages against UConn and the defendants sued in their official capacities.

In order to facilitate an understanding of the plaintiff's claim, it is virtually essential to have at hand the sections of the relevant statutes and provisions of the collective bargaining agreements and UConn bylaws which were the subject of the motions to dismiss. Chapter 68 of the General Statutes is entitled "Collective Bargaining for State Employees" (hereinafter the act). Its provisions provide a comprehensive scheme for regulating the labor relations between state employees and the state as their employer. See General Statutes § 5-270 et seq. Under the authority of the act, UConn and AAUP entered into two successive collective bargaining agreements (hereinafter agreement[s]) which governed the terms and conditions of the plaintiff's

employment at UConn. Article 10 of each of the agreements makes provision for a grievance and arbitration procedure. A grievance is defined therein as "a dispute concerning the interpretation or application of the terms or provisions of this agreement." The three step procedure begins with an informal discussion between the employee and the immediate UConn official involved. At the option of the employee, the AAUP may join the discussion. The final step involves arbitration; the AAUP, at the request of the employee, may proceed to arbitration at step 3. The decision of the arbitrator is to be final and binding, subject to statutory review procedures. The plaintiff also cites article 10.3 which provides: "If prior to seeking resolution of dispute by filing a grievance under this contract, or while the grievance proceeding is in progress, a member seeks to resolve the matter in any other forum, whether administrative or judicial, the Board [of Trustees] shall have no obligation to entertain or proceed with this grievance procedure."

Article 10 also provides for a fifteen day time limitation for oral presentation and a thirty-seven day time limitation for written presentation at step 1. If a grievance is not so presented, it is not deemed a grievance under the agreement. This arbitration procedure does not apply to matters of policy or grievances involving the UConn board of trustees' bylaws. For these matters, the agreements provide that the employee is required to follow the grievance procedures contained in UConn's bylaws rather than the contractual grievance/arbitration policy.

The plaintiff also cites various portions of article X.L. of the UConn laws, bylaws, and rules of the board of trustees. In particular, a tenured appointment may be terminated only for cause and upon the affirmative vote of nine trustees; adequate cause for dismissal must relate directly and substantially to the professional fit-

ness of the faculty member; pending final decision on dismissal proceedings, for which detailed hearing procedures are provided, the faculty member may be suspended from duty or reassigned only if immediate harm to himself or others is threatened by continued performance of duties and with salary to continue during suspension; and faculty members with tenured status who are dismissed for reasons not involving moral turpitude are to receive their salaries for at least one year from the date of notification of dismissal. Lastly, the plaintiff cites article X.L. 13: "No member of the professional staff or other employee in the service of the University shall devote to private purposes any portion of the time due the University without the consent of the President. Members of the professional staff may take on outside consulting and research activities only after the specific project has been approved by the President [or the Provost]. Such approval shall take into account the time required, the nature of the service, potential conflict of interest, and the contribution of such activities to the professional advancement of the staff member. Any changes with respect to these matters after the project has been initiated shall also require approval in advance."

Initially, it is important to recognize that at the hearing on the motions to dismiss, the lawyer for UConn stated that "[w]e see no question of fact that's at issue right now." Accordingly, the trial judge treated the motions to dismiss as motions to erase which admit "all well pleaded facts, the complaint being construed most favorably to the plaintiff. *Brewster* v. *Brewster*, 152 Conn. 228, 233, 206 A.2d 106 (1964)." *Duguay* v. *Hopkins*, 191 Conn. 222, 227, 464 A.2d 45 (1983), quoting *American Laundry Machinery, Inc.* v. *State*, 190 Conn. 212, 459 A.2d 1031 (1983). A favorable construction of the complaint in this case reveals the following relevant "facts": the plaintiff was dismissed from her posi-

tion at UConn as of June, although she was not retired until November of 1979, and (2) no dismissal proceedings were held nor was any vote of the UConn board taken to terminate her position at UConn. The complaint contains no claim by the plaintiff that she pursued any contractual remedy under the collective bargaining agreement or any state administrative remedy under the bylaws.

We first consider the claims of the plaintiff involving UConn, members of its board of trustees, members of the state employees retirement commission, and the five UConn officials in their official and individual capacities. The plaintiff maintains that UConn's characterization of her leaving the university as "constructive resignation" constituted a deprivation of her due process rights and entitled her to legal and equitable remedies, including damages and declaratory relief, under § 1983 and the Connecticut Declaratory Judgment Act. In addition, she claims that article X.L. 13 of the Trustees' Rules which restricts outside activities of UConn employees is void for vagueness, that its overbreadth acts as an "invalid chilling restraint and impingement upon activities," and that it violates her rights under the state and federal due process clauses. She also claims that her termination "without the required hearings and findings in connection with dismissal proceedings" deprived her of due process rights. Count six is designed to pursue a class action, claiming that UConn's differing treatment between nine-month and eleven-month appointments violated 42 U.S.C. §§ 1983 and 1985. She also alleges that UConn's termination of her salary and other compensation without a hearing provided in the Trustees' Rules violated the due process and equal protection clauses of both the state and federal constitutions in violation of 42 U.S.C. § 1983. In her last count concerning UConn, the

plaintiff claims that UConn unduly interfered with and hindered her right to pursue her profession in violation of § 1983.

The trial court in this case dismissed the entire case for the plaintiff's failure to exhaust administrative remedies. On appeal, the plaintiff maintains that since her dismissal was covered by the board's bylaws and grievable *only* to the board of trustees, a state administrative remedy, exhaustion was not required with respect to her § 1983 claims due to the recent holding in *Patsy* v. *Board of Regents of the State of Florida,* 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982). We agree.

In the *Patsy* case, decided subsequent to the trial court's issuance of its memorandum of decision in this case, the United States Supreme Court held that "[b]ased on the legislative histories of both [42 U.S.C.] § 1983 and § 1997e, we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." Id., 516. The defendant UConn would seek to limit the holding of this case to § 1983 actions brought only in the federal courts. The incongruous result of such a limited interpretation, however, would be to allow plaintiffs instituting federal court actions to do so without exhausting state administrative remedies, while requiring plaintiffs suing in Connecticut courts to first exhaust such remedies. Since it is clear that claims for liability for deprivation of federal constitutional rights under § 1983 are claims as to which there is concurrent jurisdiction; *Maine* v. *Thiboutot,* 448 U.S. 1, 3 n.1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980); *Stratford* v. *Bridgeport,* 173 Conn. 303, 306–11, 377 A.2d 327 (1977); we think that such a limitation on the court's holding is inappropriate.

Although we find that exhaustion was not required in this case on the § 1983 claims, we agree with the defendants that alternative grounds sustain the dismissal as to certain of the plaintiff's claims. Sovereign immunity is the alternative ground which will lead to dismissal of those portions of counts one through eight for which damages are requested in prayers two and three as well as the second half of prayer five.[3] The claims for damages brought against UConn and certain officials at the university are, in effect, actions against the state as a sovereign and are, therefore, barred by the doctrine of sovereign immunity. See *Sentner* v. *Board of Trustees,* 184 Conn. 339, 439 A.2d 1033 (1981). Consequently, such claims are subject to dismissal pursuant to § 143 of the Practice Book.

"We have long recognized the common-law principle that the state cannot be sued without its consent. *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977); *Textron, Inc.* v. *Wood,* 167 Conn. 334, 339, 355 A.2d 307 (1974). We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in

---

[3] In her second amended complaint, the plaintiff seeks the following relief:

"1. a declaratory judgment determining the lawful date on which plaintiff shall be deemed to have been officially terminated as a member of the faculty and professional staff at The University of Connecticut, to have been officially removed from the State payroll, and to have officially commenced her retirement from State service;

"2. as to the First, Second, Third, Fourth, Fifth, Seventh and Eighth Counts, of the foregoing complaint, and against defendants Wilson, Kersting, Manning, Stack, and Surridge, the award of compensatory and exemplary damages for violations and infringements of plaintiff's rights under the United States and Connecticut constitutions as alleged in said counts;

"3. as to the Sixth Count, and against defendants UCONN-AAUP, Wilson, and Kersting, the award of compensatory and exemplary damages for violations and infringements of plaintiff's rights under the United States and Connecticut constitutions as alleged in said count;

"4. as to the Ninth and Tenth Counts, and against defendant UCONN-AAUP, the award of compensatory and exemplary damages for violations

which the officer represents the state is, in effect, against the state. *Horton* v. *Meskill,* supra; *Textron, Inc.* v. *Wood,* supra; *Baker* v. *Ives,* 162 Conn. 295, 297, 294 A.2d 290 (1972); *Murphy* v. *Ives,* 151 Conn. 259, 262, 196 A.2d 596 (1963); *Anderson* v. *Argraves,* 146 Conn. 316, 320, 150 A.2d 295 (1959). Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant. *Anselmo* v. *Cox,* 135 Conn. 78, 79–80, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405 (1948); *Rusch* v. *Cox,* 130 Conn. 26, 34, 31 A.2d 457 (1943)." (Footnote omitted.) *Sentner* v. *Board of Trustees,* supra, 342–43.

In *Owen* v. *Independence,* 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673, reh. denied, 446 U.S. 993, 100 S. Ct. 2979, 64 L. Ed. 2d 850 (1980), the United States Supreme Court stated that "[w]here the immunity claimed by the defendant was well established at common law at the time Section 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity." Id., 638. The doctrine of sovereign immunity was well established at common law at the time § 1983 was enacted. It is supported by

and infringements of plaintiff's rights under the United States and Connecticut constitutions and for failure to represent plaintiff duly and in good faith;

"5. a determination and authorization pursuant to Section 88 of the Practice Book, that the Sixth Count of this action be maintained as a class action, with the award of compensatory and exemplary damages to members of the class and such declaratory and injunctive relief as to equity may pertain;

"6. a declaratory judgment that: (a) Article X(L) (13) of the Trustees' Rules is unconstitutional and invalid for the reasons alleged in the Second, Third, and Fourth Counts of the foregoing complaint, and (b) the application of any doctrine of 'constructive resignation' or 'implied resignation' in the circumstances of this case is unconstitutional and invalid for the reasons alleged in the First, Fifth, Seventh, and Eighth Counts of the foregoing complaint;

"7. costs, and reasonable attorney's fees; and

"8. such other and further relief as to equity may pertain."

a strong policy reason; that is, to prevent the imposition of enormous fiscal burdens on states. As concluded by the court in *Quern* v. *Jordan,* 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979), Congress did not intend "by the general language of Section 1983 to override the traditional sovereign immunity of the States." Id., 341. "Section 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States." Id., 345. The court in *Quern* noted that "neither the language of the statute nor the legislative history discloses an intent to overturn the States' Eleventh Amendment immunity by imposing liability directly upon them." Id., 344 n.16.

At oral argument, counsel for the plaintiff admitted that sovereign immunity was a bar to those claims involving UConn and those individuals sued in their official capacities. As to those defendants sued in their individual capacities, however, it was argued that the doctrine was inapplicable. Under the circumstances presented to us in this case, we disagree.

The doctrine of sovereign immunity does not mandate that all suits against government officers in either their official or individual capacities, since they are in effect against the government, must be barred. The rule is well settled, however, that a suit against an officer of a state as representing the state in action and liability, where the state is the real party against whom relief is sought, and where judgment for the plaintiff, *although nominally against the officer as an individual,* would operate to control the action of the state or subject it to liability, is barred. See *Simmons* v. *Parizek,* 158 Conn. 304, 259 A.2d 642 (1969), and 72 Am. Jur. 2d, States § 108. Since the plaintiff makes no claim

in this case that any of the defendant officers sued in their individual capacities acted pursuant to an unconstitutional enactment or in excess of statutory authority; see *Horton* v. *Meskill,* supra, 624, quoting Block, "Suits Against Government Officers and the Sovereign Immunity Doctrine," 59 Harv. L. Rev. 1060, 1080 (1946); sovereign immunity requires dismissal of those portions of counts one through eight requesting relief by way of damages in the second, third and fifth prayers for relief.

A careful reading of *Horton* v. *Meskill,* supra, also requires us to deny the first prayer for relief which seeks a declaratory judgment as to the official dates of the plaintiff's termination for removal from the payroll and retirement. In *Horton,* we recognized that sovereign immunity does not generally bar judgments in declaratory judgment actions when state officials are involved: "The declaratory judgment procedure in Connecticut . . . is peculiarly well adapted to the judicial determination of controversies concerning *constitutional rights* and . . . the *constitutionality* of state legislative or executive action." (Emphasis added.) Id., 626. The plaintiffs in *Horton,* children enrolled in public schools in Canton, sought declaratory judgments declaring the educational financing system violative of the state and federal constitutions. Holding that sovereign immunity did not bar this suit against various state and town officials, we stated: "A [judicial] holding to the contrary would foreclose proper judicial determination of a significant and substantial *constitutional* question the determination of which is manifestly in the public interest." (Emphasis added.) Id., 628. Since the first prayer for relief seeks a declaratory judgment not alleged to involve a constitutional infringement or violation, this claim was properly dismissed.

As for the plaintiff's remaining claims vis-a-vis the defendant UConn, the trial court on remand will be left

to consider on the merits the relief requested in the first half of prayer five and both sections (a) and (b) of the § 1983 claim in prayer six (from UConn's conduct as outlined in counts two through eight of the complaint).

We next consider the plaintiff's claims against the defendant union AAUP. Count six of the complaint alleges that the AAUP condoned the maintenance of the dual system of appointments (i.e., nine-month and eleven-month employees), that said conduct of AAUP was not under color of state law, and that said conduct violated § 1983 and the equal protection clause of the United States constitution.

The plaintiff's count nine alleges that UConn and AAUP entered into two collective bargaining agreements, and that she requested AAUP to protect her rights, but that AAUP arbitrarily and in bad faith failed to take reasonable steps to protect such rights against actions by the other defendants. In addition, the plaintiff alleged that by entering into said agreements and by refusing to act to protect the plaintiff's rights, AAUP acted in concert with the other defendants in depriving the plaintiff of equal protection and of equal privileges and immunities entitling the plaintiff to relief under §§ 1985 and 1988. Count ten repeated the allegations of the ninth count and alleged that by AAUP's refusal to act to protect her rights, it breached its duty to represent the plaintiff as required by the Collective Bargaining Act for State Employees and the collective bargaining agreements.

We find that the plaintiff's § 1983 claim in count six was improperly dismissed even though the plaintiff alleged that none of the actions taken by the AAUP was under color of state law. Section 1983 of 42 U.S.C. is available to redress deprivations under color of state law of rights, privileges and immunities secured by federal statutes as well as by the constitution. See *Maine*

v. *Thiboutot,* 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1979). It has been held, however, that private persons, jointly engaged with state officials in a challenged action, are acting "under color of law" for purposes of § 1983; if a complaint makes such allegations of a joint enterprise, the complaint is not defective if it fails to allege that the private defendant was acting under color of state law. See *Dennis* v. *Sparks,* 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980). Although the plaintiff in this case did not employ the words "joint enterprise," she did allege that the "defendant Trustees *and* their predecessors, as the University Board, *and* University administrators, including defendants Wilson and Kersting, *and* defendant UCONN-AAUP" violated § 1983. (Emphasis added.) Since the doctrine of sovereign immunity is not applicable to the union and since we have previously determined that exhaustion of the contractual or state administrative remedies was not required, we hold that count six alleges sufficient facts against the AAUP to withstand dismissal.

The plaintiff's § 1985 claim must fail since it is well settled that in order to make a viable claim under § 1985, the complaint must allege invidiously discriminatory, class-based animus and must allege facts showing this invidiousness. In the absence of any evidence of class-based animus, the action must fail. See *A & A Concrete, Inc.* v. *White Mountain Apache Tribe,* 676 F.2d 1330 (9th Cir. 1982); *Hutchens* v. *Beckham,* 521 F. Sup. 426 (D. Ga. 1981); *Sappington* v. *Pennsylvania,* 535 F. Sup. 429 (D. Pa. 1982). Since there is an absence of any such claim or facts concerning invidious, class-based animus in the complaint in this case, the trial court did not err in its dismissal of the § 1985 (3) claim against AAUP.

The plaintiff's final claims against the union, as outlined in count ten of the complaint, are those alleging

unfair representation, which is a breach of the AAUP's duty arising under the act and a breach of the collective bargaining agreement itself. The plaintiff points to the agreement in this case which recognized "[t]he University of Connecticut Chapter of the American Association of University Professors as the exclusive bargaining representative of members of the staff." She seems to be arguing that the AAUP had some duty to represent her under the collective bargaining agreement at hearings which were never pursued. In fact, the plaintiff argues in her brief that article 10.3 of the agreement cited earlier in this opinion "clearly indicate(s) that plaintiff's claims are not grievable under the collective bargaining agreements . . . ." By force of such a concession, we think that the plaintiff surrendered any right to claim union representation in regard to that procedure. Had the plaintiff chosen to forego her claim for attorney's fees and initiate the faculty grievance procedure under the by-laws, she might have been allowed to pursue her claim if the AAUP had failed to represent her. Her pursuit of a judicial remedy, however, in lieu of the administrative grievance remedy extinguished her right to AAUP representation under the controlling agreement.

As for the plaintiff's unfair representation allegations under the act, she cites § 5-271 (c) which provides that an exclusive representative of employees "shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership." The defendant AAUP argues that the plaintiff's claim is not viable since she must pursue this claim before the state board of labor relations prior to resort to any judicial remedies. Since unfair representation is a prohibited practice of statutory origin, the union argues that no relief is available in court *except* the enforcement of an order of the state board of labor relations.

Even if we assume that this claim is properly labeled a prohibited practice under § 5-272, we do not read the act to provide nor do we find authority for the assertion that any state board of labor relations remedy available to the plaintiff is exclusive. Having alleged a breach of the duty to represent her fairly, and resultant injuries and losses, the plaintiff has adequately set forth a claim of unfair representation; the trial court erred in dismissing this claim.[4]

In view of our conclusions herein, as to UConn we uphold the trial court's dismissal of those portions of counts one through eight which may not be pursued due to the doctrine of sovereign immunity. As to the union AAUP, we conclude that a dismissal as to only count nine and part of ten against them was warranted. Accordingly, we remand this case to the trial court for further proceedings on the following issues: as to UConn, (1) whether the sixth count, involving the "dual system of appointments," may be maintained as a class action pursuant to § 88 of the Practice Book, (2) whether article X.L. 13 of the Trustees' Rules is unconstitutional for the reasons alleged in the second, third and fourth counts of the complaint, and (3) whether the doctrine of "constructive or implied resignation" in the circumstances of this case is unconsitutional for the reasons alleged in the first, fifth, seventh and eighth counts of the complaint. As to the Union, we remand for consideration of (1) whether the § 1983 claim in count six is meritorious, and (2) whether the union breached its duty of fair representation under the act as outlined in count ten.

There is error in part, the judgment is set aside in part and remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[4] In view of our conclusions in this opinion as to both UConn and AAUP, we need not reach the second and third issues presented to us in this appeal.