[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
In February 1992, the court requested the parties to ask that an appellate court take this case on reservation under Practice Book Sections 4147 and 4148. On March 30, 1992, the court was notified that the court's request was refused.
Plaintiffs bring this action in four counts by verified complaint seeking injunctions, an order for class action, declaratory judgment, damages and double damages, costs, expenses, and attorney's fees.
Defendants move to dismiss, because (1) the court lacks subject matter jurisdiction because the plaintiffs have failed to exhaust their administrative remedies; (2) sovereign immunity protects the defendants and; (3) the individual defendants are immune from suit in their individual capacities.
Facts Alleged CT Page 4340
The plaintiffs are Connecticut Employees Union Independent, Inc. ("CEUI") and Joseph D'Amato and Jody Humble, employees of the State of Connecticut ("Employees"). The employees are citizens and taxpayers of this state. They are both full-time classified civil service employees of this state.
The defendants are Lowell P. Weicker, Jr., as Governor of the State of Connecticut and also in his individual capacity ("Governor"); and William J. Cibes, Jr., as Secretary of the Office of Policy Management of the State of Connecticut and also in his individual capacity ("Cibes"); and the State of Connecticut.
CEUI is the exclusive collective bargaining representative for approximately 6,500 classified employees of this state in the Maintenance and Service Bargaining Unit (NP-2).
CEUI has a Collective Bargaining Agreement ("Agreement") with the State, which establishes the wages, hours and other working conditions for employees in the NP-2, effective July 1, 1988, through June 30, 1991, and, extended by the provisions of Conn. Gen. Stat. Sec. 5-278a.
The State is a public employer of the constituent member of CEUI, and, is an employer within the definition of Conn. Gen. Stat. Sec. 5-270 (a); and, within the definition of Conn. Gen. Stat. Sec. 31-71a and Chapter 558 of the Connecticut General Statutes.
Plaintiffs bring this action on their own behalf and on behalf of the entire class of persons employed in NP-2.
For some time before the adoption of the State budget and continuing to the present, the Governor's office and his designated representatives have engaged in discussions with the various unions representing State employees in a group known as State Employees Bargaining Agent Coalition ("SEBAC") seeking concessions. Conn. Gen. Stat. Section 5-278 (f)(1) requires bargaining by a coalition commission for State employee retirement and contemplates discussion of state-wide issues, including health and welfare benefits, through a coalition committee. CEUI at all times pertinent has participated in the coalition committee.
While the Governor's office and SEBAC were involved in discussions on or about the beginning of September, 1991, the Governor ordered the implementation of a so-called "Employee Reduction Plan" ("Plan") which included two phases. Phase I provided for layoffs of approximately 2,500 State employees; CT Page 4341 and, Phase II provided for additional layoffs of over 1,250 employees and partial closings of State Agencies between November 1, 1991 and June 30, 1992.
This Plan and the threat of lockouts were undertaken as threats or for coercion to the various State employee unions who were in the process of discussing wage concessions with the Governor's office.
At all times pertinent, CEUI has been attempting to discuss the various issues with the Governor's office and his representatives in conjunction with other unions representing State employees in SEBAC.
On or about the beginning of October, 1991, the Defendants in bad faith began to implement Phase II and now have partial closings from the beginning of November, 1991, June 30, 1992.
 In one letter to DAS employees, the Commissioner, Reginald Smith, explained the Governor's procedure:
 As I indicated to you in my memorandum of October 7, 1991, the Department of Administrative Services will be closed for sixteen (16) days during the period November 1, 1991 through June 30, 1992. These closings are part of "Phase II" of the State's Employee Reduction Plan which was necessitated given the lack of employee wage concessions and which was developed so as to minimize layoffs and continue essential services.
 This memo will serve to inform you that this Department will be closed on the following dates:
 1991 1992 Friday — November 8 Friday — January 17 Friday — November 22 Friday — January 31 Friday — November 29 Friday — February 14 Tuesday — December 24 Friday — February 28 Tuesday — December 31 Friday — March 13 Friday — March 27 Friday — April 10 Friday — April 24 Friday — May 8 Friday — May 22 Friday — June 5
 All Bargaining Unit Personnel are hereby notified at your works, schedule will be modified so that CT Page 4342 you should not report to work on those days, unless you are instructed to do so in writing by your Bureau Head. The use of vacation, sick, personal, compensatory or other paid leaves will not be permitted on those days unless approval for such was granted in writing prior to October 3, 1991. Although you will not be paid for those days, your health insurance, seniority, longevity entitlements as well as your sick and vacation accruals will not be affected by the change in your work schedule. Employees on four (4) day flex schedules (8 3/4 hour work days) will revert to standard work schedules during the weeks in which these days fall, as if the schedules were being adjusted to accommodate a holiday.
 All Non-Bargaining Unit Personnel are to report to their duty stations on these days unless exceptions have been approved (i.e. approved leave time, etc). (emphasis added).
At all times pertinent, the individual representative plaintiffs and members of the class were employed in accordance with the State Personnel Act.
Connecticut General Statutes Section 5-267 mandates that all officers, including the defendants herein, appointing authorities and other State employees shall conform to, comply with and aid in carrying into effect of the provisions of the State Personnel Act.
Connecticut General Statutes Section 5-268 further indicates that any person who willfully or through culpable negligence, violates, or conspires to violate, any provision of this Chapter shall be subject to penalty.
Connecticut General Statutes Section 5-241 also describes and limits authority for layoff of classified employees.
This section reads, in pertinent part:
 (a) No employee in the classified service who has been performing his duties in a satisfactory manner as shown by the records of the department, agency or institution in which he has been employed shall be dismissed or laid off from his position because of lack of work, economy, insufficient appropriation, change in departmental organization, abolition of position, or any cause other than disability, delinquency, CT Page 4343 incompetency, misconduct or neglect of duty, if any other employee in the same classification performing comparable duties with less State service is to be retained in the same department, agency or institution. (Emphasis added).
Section 5-241 also requires a minimum notice of two (2) weeks to each employee to be laid off.
Connecticut General Statutes Section 5-272 (a) forbids the lockout of State employees.
As members of NP-2, the Employees and those similarly situated are entitled to additional rights and benefits established by the Agreement and are the intended beneficiaries of that Agreement and any extension thereof.
The plaintiffs and those similarly situated are third-party creditor beneficiaries of the Agreement.
The Agreement provides in Article 4, Section 3 that the employer agrees that during the life of the Agreement, there will be no lockout.
The Agreement, Article 13, Order of Layoff and Reemployment also requires that for any layoff, the employer must notify the Union and meet to discuss the possible alternative proposals to avoid the layoff and/or to mitigate the impact on the employees.
The Agreement in Article 13, Section 3 further requires the employer to provide the employees not less than six (6) weeks' written notice of layoff, stating a reason for such action.
The Plan violates statute and further constitutes a repudiation of the unambiguous provision of the Agreement. The unlawful imposition of a "shutdown" and/or "lockout" program by the Governor and the State upon the more than 6,500 employees represented by CEUI, causing separation of these employees from payroll and the loss of wages, constitutes a substantial and irreparable harm.
The Governor does not have authority without express authorization of the General Assembly to shutdown or suspend State services, lockout, or layoff classified employees and refuse to operate basic government services provided for in the various Chapters of the Connecticut General Statutes, or, possess any lawful authority to abrogate and refuse to comply with CT Page 4344 the contractual undertakings and obligations of the State of Connecticut.
The actions of Cibes, to assist, to conspire with, and further, to implement any instructions of the Governor to shutdown or suspend State services exceeds his lawful authority and jurisdiction under the laws of this state and its Constitution.
A multiplicity of lawsuits will likely result because of the intentional, unilateral breach by the Governor and the Secretary of the State's Collective Bargaining Agreements and the breach of other contracts and agreements; the Governor's actions will cause chaotic conditions to jeopardize the employment status of the members of the Plaintiff, CEUI, because a real possibility exists that the Defendant State may not later appropriate sufficient funds to reimburse and pay back wages, accrued vacation pay, and other damages which may result from the intentional, willful violations of statute and breach of its agreements with the Plaintiffs; and, further, the Plaintiff, CEUI, and its members will be unfairly and unduly burdened in costs, time, expenses, seniority violations, denial of fringe and vacation benefits, unlawful reduction of pension benefits and other hardships resulting from the Governor's violation of statute and the Collective Bargaining Agreement; and the resulting lockout of bargaining unit members will adversely affect the public interest, public safety, and important public services, all of which leaves the Plaintiff, CEUI, and its members without an adequate remedy at law and causing them to suffer irreparable harm.
The actions of the defendant constitute intentional, bad faith, willful violation of statute and abrogation of specific protections under the Agreement and constitute a clear and present danger to the welfare, public interest, and, in some instances, public safety.
The State has waived any right to sovereign immunity for any claims pertaining to State employees and under the Agreement as alleged herein by virtue of the provisions of the State Employee Relations Act, Conn. Gen. Stat. Section 5-270
et. seq., or, for unpaid wages and benefits in Conn. Gen. Stat. Section 31-71a et. seq.
The Plaintiffs and those similarly situated have no adequate remedy at law.
The Plaintiffs and those similarly situated will suffer, and substantial probability exists that they will suffer, immediate, substantial and irreparable harm. CT Page 4345
Defendants will not suffer substantial and irreparable harm by continuing status quo and continuing the operation of government services, pending resolution of the issues set forth in this Complaint.
The actions, orders and instructions of the Defendants alleged herein constitute a substantial impairment of the Plaintiffs' rights and the rights of the employees represented by the Plaintiffs under the Agreement in violation of Article 1, Section 10 of the United States Constitution (Contract Clause).
The acts and omissions of the individual Defendants herein described also constitute a deprivation of the Constitutional rights, privileges and immunities of the Plaintiffs, and are carried out under the color of law.
As classified civil service employees with permanent status and as employees further protected by contract provisions of the Agreement, the Plaintiffs enjoy a legal entitlement and expectancy of continued employment which amounts to a property interest protected under the Due Process clause of the United States Constitution and in Article 1, Section 10 of the Connecticut Constitution.
Plaintiffs further enjoy substantive due process protection and the right to be free from arbitrary and capricious government action; as well as the right to be free from taxes illegally imposed on them.
The shutdown or suspension of government operations and the resulting lockout and furlough of the Plaintiffs and those similarly situated under the circumstances alleged in this Complaint, represents an arbitrary, capricious or willful violation of Plaintiffs' rights to substantive and procedural due process and equal protection of the law under the Fifth andFourteenth Amendment to the United States Constitution, and Article1, Section 10 of the Connecticut Constitution.
As the direct and proximate result of the acts and omissions of the individual Defendants and each of them herein described, the Plaintiffs are about to be deprived by the Defendants of their job security, salary (wages), including pension benefits, health, accident and group life insurance benefits, and other emoluments of employment without due process of law; or, be compelled to pay a tax illegally imposed.
Chapter 68 establishes collective bargaining for State employees and is commonly referred to as the State Employee CT Page 4346 Relations Act ("SERA").
SERA defines "Employer" to mean the State and its executive and judicial branches and establishes basic rights for employees of the State and employee organizations such as CEUI.
SERA waives the sovereign immunity of the State of Connecticut with respect to collective bargaining and all rights established under SERA for the benefit of State employees and employee organizations.
SERA establishes "prohibited practices" and prohibits the Defendants from, inter alia:
a. interfering with, restraining or coercing employees in the exercise of rights guaranteed under SERA;
b. engaging in a lockout of employees;
c. dominating or interfering with an employee organization;
d. refusing to bargain in good faith; and,
e. discriminating against employees for participating in collective bargaining or concerted action.
Repudiation of an existing collective bargaining agreement or engaging in unilateral action constitutes a refusal to bargain and a violation of SERA.
Engaging in a lockout is specifically prohibited by Conn. Gen. Stat. Section 5-272 (a)(1).
The rule espoused by the Connecticut Supreme Court in Fetterman v. University of Connecticut, 192 Conn. 539,473 A.2d 1176 (1984); and followed by the Appellate Court in Cianci v. Connecticut Council for American Federation of State, County and Municipal Employees, 8 Conn. App. 197, 512 A.2d 232 (1986) establish concurrent jurisdiction in the Superior Court with the State Board of Labor Relations and the Plaintiffs hereby invoke the jurisdiction of the Superior Court.
The actions of the Defendants constitute prohibited practices, repudiation, and, a refusal to bargain, in violation of SERA.
The Plaintiffs and those similarly situated have no adequate remedy at law for the violations of SERA, especially for a lockout. CT Page 4347
The Plaintiffs and those similarly situated will suffer, and substantial probability exists that they will suffer and experience immediate, substantial and irreparable harm in the absence of temporary, preliminary and permanent injunctive relief.
Defendants' actions have violated the unambiguous provisions of the Agreement, affecting all the members of the bargaining unit and their families.
CEUI plans to file grievances challenging the actions of the Defendants. Despite the grievances, the Defendants appear to be willing to persist in following a procedure contrary to the Agreement and to SERA.
On information and belief, the Defendants have threatened clear and obvious violations of the Agreement.
The actions of the Defendants are contrary to law and contrary to the Agreement and will cause significant disruption in the workplace and grave concern and fear of loss of jobs for numerous members of the bargaining unit.
The threatened actions of the Defendants will cause significant disruption of State services, as well as disruption to earning capacity and to the lives of the constituent members of the Plaintiff, CEUI.
At this time, the Defendants are without lawful authority or jurisdiction to act for the reasons asserted above.
The eventual resolution of the grievances by arbitration may result in substantial dollar payments to employees improperly put out of work, furloughed, or otherwise treated illegally.
Unless this Court intervenes in aid of arbitration and maintains the status quo, the Plaintiff employees and those similarly situated will be wrongfully separated from their jobs, suffer unnecessary trauma of loss of jobs and income.
Unless this Court intervenes in aid of arbitration and maintains the status quo, CEUI will appear unable to protect the interests of its members.
The continuous violations of statutes and contract by the Defendants make the Plaintiff, CEUI, appear helpless to prevent such clear breaches of law and as unable to resolve the conflict; and, such actions undermine the position of the CT Page 4348 Plaintiff, CEUI, with its membership and cause irreparable harm to its status as exclusive bargaining representative.
The actions of the Defendants violate the commitments and provisions made in the Agreement and cause irreparable harm for which no adequate remedy at law exists.
First Count
In the First Count, Plaintiffs allege that the shutdowns which began on Friday, November 8, 1991, are not authorized or permitted under the State Constitution, any State statute, or public policy of the State.
Second Count
Plaintiffs bring the Second Count under42 U.S.C. § 1983; the Fourteenth Amendment; Article I Section 10 of the State Constitution; and, the Contract Clause of the U.S. Constitution (Article I Section 10).
Third Count
The Third Count is a cause of action for prohibited practices under Conn. Gen. Stat. Sec. 5-270 et. seq., State Employee Relations Act (SERA).
Fourth Count
The Fourth Count alleges breach of the Agreement and seeks equity in aid of and to protect the arbitration process under Conn. Gen. Stat. Sec. 52-422.
Law
I. Sovereign Immunity
The doctrine of sovereign immunity exists in Connecticut. Fetterman v. University of Connecticut, 192 Conn. 539. It admits of three exceptions.
A. Waiver
The waiver by the state of its sovereign immunity must be express and by legislation showing consent to be sued. White v. Burns, 213 Conn. 307, 312. "It may be stated we think as a universal rule on the construction of statutes limiting rights, that they are not to he construed to embrace the government or sovereignty unless by express terms or necessary implication such appears to have been the clear intention of the CT Page 4349 legislature, and the rights of the government are not to be impaired by a statute unless its terms are clear and explicit, and admit of no other construction." State of Connecticut v. Shelton, 47 Conn. 400, 404-405.
1. First Count — Contract and Wage Claims
Plaintiffs claim that there may be waiver by "force of a necessary implication." The states protection from suit without its consent is not to be diminished unless there appears in the law the clear intention of the legislature to reduce that protection. Fidelity Bank v. State, 166 Conn. 251,253. We do not see that here, except in Conn. Gen. Stat. Secs.31-58 (e) and 31-71a(1). Under those two sections the State is subject to the wage law as an employer. Civil actions are allowed against employers. Conn. Gen. Stat. Sec. 31-72. The defendants seem to think that the Agreement itself is before this court. It is not. If it were and if it contained an arbitration[1]
clause possibly plaintiffs would be required to exhaust that remedy. Plaintiffs may sue under Conn. Gen. Stat. Sec. 31-72 as it provides a clear waiver.
Wages are only due under the statute to employees.
Plaintiffs are employees. See Defendants Memorandum of Law 11/14/92, p. 8. As the complaint makes clear they have been laid off. Complaint Paragraph 12, 16, 27, 28, 30. Plaintiffs' Memorandum p. 22. But that does not wipe out their rights under Conn. Gen. Stat. sec. 31-72.
2. Second Count — Sec. 1983
No waiver is seen for this count.
3. Third Count — SERA
This statute does not grant an express waiver for this type of action, although it does allow enforcement of certain orders in this court. Conn. Gen. Stat. Secs. 5-274 (b) and (d); 31-107; 31-108; 31-109. There is no waiver under SERA.
4. Fourth Count — In Aid of Arbitration
Conn. Gen. Stat. Sec. 52-422 reads as follows:
 Order pendente lite. At any time before an award is rendered pursuant to an arbitration under this chapter, the superior court for the judicial district in which one of the parties resides or, in a CT Page 4350 controversy concerning land, for the judicial district in which the land is situated or, when said court is not in session, any judge thereof, upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.
For relief under this count plaintiffs claim injunctions "enjoining the Defendants from [shutting down] . . . government operations . . . and the layoff/furlough of the Plaintiffs."
The plaintiffs have presented no indication of a waiver of the doctrine of sovereign immunity for this count.
The Agreement was specifically approved by the legislature. Conn. Gen. Stat. Sec. 5-278.
Plaintiffs do not have a right to come to court if the lay-offs are made in accordance with Conn. Gen. Stat. Sec.5-241 (a). Plaintiffs do not claim the lay-offs were not made in accordance with that statute.
B. Constitutional Protection
1. First Count — Contract and Wage Claims
This count probably should be revised. In its present condition it could possibly be presenting some constitutional issues.
2. Second Count — Sec. 1983
This count claims constitutional protection under both the Contract Clause and the due process clause. No facts are alleged about the passage of a law that impairs a contract of plaintiffs.
Under the United States Constitution "no state shall pass any . . . Law impairing the Obligation of Contracts . . .". This prohibition against impairment of contracts is not to be read literally. Keystone Bituminous Coal Assn. v. DeBenedictis,480 U.S. 398, 428. The "question is whether the state law has in fact operated as a substantial impairment of a contractual relationship." Schieffelin Co. v. Department of Liquor Control, 194 Conn. 165, 177-178. Plaintiffs do not tell the CT Page 4351 court what law the state passed to impair the obligation of their contract rights. They do suggest that an improper application of legislation may violate the Contract Clause but cite no authority.
They also claim a property interest in their contract and defendants do not seem to dispute that.
Defendants do claim that in regard to due process claims a distinction is to be made between these layoffs and "for cause" dismissals. In the complaint these layoffs are not such dismissals. This is not a "for-cause" firing and thus there is no constitutional right to a hearing. Perretta v. New Britain, 185 Conn. 88, 96.
Thus the plaintiffs must allege some waiver of the sovereign immunity. This they have failed to do for this count.
3. Third Count — SERA
This count does not allege facts that would establish constitutional violations.
4. Fourth Count — In Aid of Arbitration
The court finds no allegations in this count that proceeding, or not proceeding, through some kind of arbitration process has some constitutional limitations that would bar the assertion of the doctrine of sovereign immunity.
C. Statutory Exceptions
Except as set forth above in regard to Conn. Gen. Stat. Sec. 31-72, there is no statutory waiver of the doctrine of sovereign immunity as to any count of the complaint.
II. Relief of Declaratory Judgment
In cases in which a plaintiff requests only "a judicial declaration of its rights" the doctrine of sovereign immunity does not protect the state. Textron Inc. v. Wood,167 Conn. 334, 341-2. In the instant case plaintiffs also seek coercive injunctions. Requests for injunctions in tandem with requests for declaratory judgments are allowed. Senter v. Board of Trustees, 184 Conn. 339, 344-45. However, plaintiffs also seek damages "on the counts for [sic] which sovereign immunity does pertain." They also seek attorneys fees, double damages and other unspecified relief. Those demands seek a judgment which will enable plaintiffs to control the activities of the state. That is not permitted. Id. 340.[2]
CT Page 4352
The complaint also seeks costs and expenses. Recovery of costs is not permitted against the state. State v. Chapman,176 Conn. 362, 366.
III. Claims Against Individual Defendants
The doctrine of sovereign immunity bars actions against state officers in either their official or individual capacity "[w]hen the state is the real party against whom relief is sought and where judgment for this plaintiff, although nominally against the officer as an individual, would operate to control the action of the state or subject it to liability." Fetterman v. University of Conn., 192 Conn. 539, 552 (emphasis in original). Horton v. Meskill, 172 Conn. 615, 623. Thus, this motion to dismiss will stand or fall on the general principles of sovereign immunity because none of these persons as individuals is a real party in interest.
Conn. Gen. Stat. Sec. 4-165 provides that state employees are not personally liable for damages that are "not wanton, reckless or malicious." The plaintiffs allege that defendants' actions were "intentional, bad-faith, willful violations of statute." They do not say defendants' acts were wanton, reckless or malicious but the allegation of willful is equal to wanton. Dubay v. Irish, 207 Conn. 518, 533. Claims under that statute are to be brought thru the claims commission process. Conn. Gen. Stat. Ch. 53. That has not been done here.
IV. Exhaustion
When an adequate administrative remedy is provided by law it should be exhausted. Shortt v. New Milford Police Department, 212 Conn. 294, 305-310; Kilenberg v. Board of Education, 206 Conn. 113, 122-123; Doe v. Heintz, 204 Conn. 17,34-37.
Our collective bargaining statute, Conn. Gen. Stat. Sec. 5-270 et. seq., deals with the problems, breaches and violations alleged in the complaints. The Agreement also seems to deal with at least some of those (e.g. Articles 4 and 13).
According to the Fourth Count of the complaint plaintiffs may be entitled to arbitration. On the allegations of the complaint of plaintiffs this court cannot find plaintiffs have a right to arbitration and so it cannot find they have a remedy they must exhaust.
V. Governor's Authority CT Page 4353
In our state the governor has the power of the executive department under our constitution. Arts. Second and Fourth, Const. of Conn.
Defendants press In re State Employees' Unions,587 A.2d 919 (R.I., 1991) to support the governor's power to "furlough" or layoff our state employees. In the Rhode Island case, the union challenged a governor's order which provided for shutdowns of state agencies for ten days. In that Rhode Island case, the trial court had the agreement before it. Included in that agreement were provisions requiring arbitration. We do not have that situation.
Motion denied as to first count. Motion granted as to second, third and fourth counts.
NORRIS L. O'NEILL, JUDGE, SUPERIOR COURT