JOSEPH JOO *v.* CAPITOL SWITCH, INC., ET AL.
(14976)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued September 23—decision released November 22, 1994

*Kenneth E. Lenz,* with whom, on the brief, was *Philip D. Lewis,* for the appellant (plaintiff).

*Theodore J. Greene,* with whom, on the brief, were *Patrick J. Filan* and *Jeannine M. Foran,* for the appellees (defendants).

PETERS, C. J. The dispositive issue in this appeal is whether a person who elects to pursue a federal age discrimination claim in a Connecticut state court must first exhaust state administrative remedies. The plaintiff, Joseph Joo, brought suit in the trial court alleging that the defendants, Capitol Switch, Inc. (Capitol), and its president, Richard J. Warren, had discharged him in violation of various provisions of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.[1] The defendants moved to dismiss, arguing that the plaintiff's failure to exhaust state administrative remedies deprived the trial court of subject matter jurisdiction over the ADEA claims. The trial court granted the motion to dismiss. The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We hold that neither federal nor state law imposes a requirement that state administrative remedies must be exhausted

---

[1] Title 29 of the United States Code, § 623 provides in relevant part: "PROHIBITION OF AGE DISCRIMINATION

"(a) EMPLOYER PRACTICES

"It shall be unlawful for an employer—

"(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ."

before a federal age discrimination claim can be brought to state court, and therefore we reverse the judgment of the trial court.

The relevant facts are not in dispute. The plaintiff, who was born in 1935,[2] was first employed by Capitol in 1962. In 1984, Warren was elected president of Capitol and remained in that position through May 16, 1988, when the plaintiff was discharged. At the time of the plaintiff's discharge and for the relevant period beforehand, Capitol had employed twenty or more employees and had continuously been engaged in an industry that affects commerce.[3]

On or about September 19, 1988, following his discharge, the plaintiff filed timely complaints with the Connecticut commission on human rights and opportunities (CHRO) and the federal Equal Employment Opportunity Commission (EEOC). On February 21, 1990,[4] less than two years after his discharge, the plaintiff filed this private civil action against the defendants in the trial court alleging violations of the ADEA and setting forth other grounds for relief.[5] Thereafter, on

---

[2] Title 29 of the United States Code, § 631 provides in relevant part: "AGE LIMITS

"(a) INDIVIDUALS AT LEAST 40 YEARS OF AGE

"The prohibitions of [the ADEA] shall be limited to individuals who are at least 40 years of age."

[3] Title 29 of the United States Code, § 630 provides in relevant part: "DEFINITIONS

"For purposes of [the ADEA] . . . .

"(b) The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."

[4] The original complaint was dated February 21, 1990. A revised complaint was filed on June 6, 1990.

[5] The revised complaint contains six counts. Counts one, two, five and six allege violations of the ADEA. Count three states a claim against Warren for falsely accusing the plaintiff of inciting coworkers to walk off the job. Count four charges Capitol with breach of contract.

February 7, 1991, the CHRO informed the plaintiff that it had found no reasonable cause for his allegation of age discrimination. The plaintiff's request for reconsideration was denied on June 12, 1991. The trial court thereafter granted the defendants' motion to dismiss the plaintiff's cause of action.[6]

None of the parties disputes that the ADEA requires the plaintiff to have filed his complaint with the CHRO. Their disagreement arises from their differing interpretations of the consequences that flow from that filing requirement. The plaintiff argues, as he did in his opposition to the motion to dismiss, that the ADEA does not impose a state exhaustion requirement on a person who files an ADEA claim in state court. In addition, the plaintiff argues that application of a state exhaustion requirement in the circumstances of this case would violate the due process guarantee of article first, § 10, of the Connecticut constitution, because the combination of an exhaustion requirement, if applicable, and the ADEA statute of limitations would deprive him of any opportunity to pursue his claim in state court.[7] The defendants, on the other hand, emphasize that the plaintiff had no obligation to elect state rather than federal court as the forum in which to pursue his action. Although they concede that, had the plaintiff chosen to sue in federal court, he would not have been required to exhaust the CHRO proceedings, they maintain that the plaintiff's election to remain in Connecticut state court bound the plaintiff to complete

---

[6] In response to the plaintiff's motion for articulation, the trial court indicated that it had dismissed counts one, two, five and six of the revised complaint. See footnote 5. The parties agreed to a stipulation that the motion to dismiss could be construed as applying to all counts of the revised complaint. Thereafter, on September 28, 1993, the trial court dismissed the remaining counts of the revised complaint against the defendants.

[7] As discussed more fully in part III of this opinion, the CHRO administrative process did not produce a final decision until after the statute of limitations for filing a private action under the ADEA had expired.

the CHRO proceedings that the ADEA had required him to commence. The plaintiff's noncompliance with this exhaustion requirement, according to the defendants, properly led the trial court to dismiss his complaint.[8]

We are persuaded that no exhaustion requirement limits a plaintiff's right to bring an ADEA action in state court for three principal reasons: (1) the language of the relevant federal statute and the construction given that statute by the federal courts; (2) the inferences to be drawn from the grant of concurrent jurisdiction over ADEA claims; and (3) the inferences to be drawn from the time frame within which an ADEA claim must be brought.

I

Our analysis of the plaintiff's federal claim begins with an examination of the ADEA and the cases decided thereunder. The ADEA provides that, before an aggrieved person may initiate a private action, he or she must file with the EEOC a charge alleging unlawful age discrimination. 29 U.S.C. § 626 (d). If the alleged acts of age discrimination occurred in a state that has enacted a law prohibiting age discrimination in employment and establishing an agency to grant or seek relief from such discrimination (deferral state), the aggrieved person must also file a signed written statement of the facts with the state agency. 29 U.S.C. § 633 (b).[9] The person must wait sixty days after filing

[8] Since the enactment of No. 91-331 of the 1991 Public Acts, codified at General Statutes § 46a-101, that statute has allowed a person to seek a release from the CHRO so as to permit the complainant to proceed directly in Superior Court.

[9] Connecticut qualifies as a deferral state under § 633 (b) of Title 29 of the United States Code. The CHRO is the state agency with which a person pursuing an ADEA claim must file a report. See General Statutes §§ 46a-82 through 46a-96.

with either agency before bringing a private action. 29 U.S.C. §§ 626 (d) and 633 (b).[10] During that period, if the EEOC commences an action to vindicate the aggrieved person's rights, the person's authority to bring a private civil action terminates. 29 U.S.C. § 626 (c) (1). Unlike § 626 (c), however, § 633 (b) contains no provision divesting the aggrieved person of authority to initiate a private civil action because of any actions initiated by the state agency during the deferral period.[11]

Although the ADEA requires charges to be filed with federal and state agencies, nothing in the statute requires a person to exhaust additional administrative remedies before filing a private civil action. As the United States Supreme Court recognized, § 633 (b) "does not stipulate an exhaustion requirement. The section is intended only to give state agencies a limited opportunity to settle the grievances of ADEA claimants in a voluntary and localized manner so that the grievants thereafter have no need or desire for independent federal relief." *Oscar Mayer & Co.* v. *Evans,* 441 U.S. 750, 761, 99 S. Ct. 2066, 60 L. Ed. 2d 609 (1979). "By its terms . . . the section requires only that state proceedings be commenced 60 days before federal litigation is instituted; besides commencement no other obligation is placed upon the ADEA grievant." Id., 759.

---

[10] Title 29 of the United States Code, § 626 (d) also establishes the outside time limits within which the discrimination charge must be filed with the EEOC and the deferral state agency. "Such a charge shall be filed— (1) within 180 days after the alleged unlawful practice occurred; or (2) in a case to which section 633 (b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." 29 U.S.C. § 626 (d).

[11] See also 29 U.S.C. § 633 (a) (state agency proceedings superseded by commencement of ADEA action); *Shanahan* v. *WITI-TV, Inc.*, 565 F. Sup. 219, 224 (E.D. Wis. 1982) (discussing § 633 [a]).

The United States Supreme Court further observed that the ADEA permits the federal and state administrative deferral periods to run simultaneously. This grant of concurrent administrative jurisdiction reflects Congress' recognition that delay in the prosecution of age discrimination claims "is particularly prejudicial to the rights of 'older citizens to whom, by definition, relatively few productive years are left.' 113 Cong. Rec. 7076 (1967) (remarks of Sen. Javits)." Id., 757. The *Oscar Mayer & Co.* decision makes clear, therefore, that the requirements of § 633 (b) must be interpreted in a manner that is consistent with "[t]he purpose of expeditious disposition" of age discrimination claims. Id.

The United States Supreme Court has also held that federal courts in ADEA cases "should recognize no preclusion by state administrative findings with respect to age discrimination claims." *Astoria Federal Savings & Loan Assn.* v. *Solimino,* 501 U.S. 104, 110, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991). The court held that the purpose of § 633 (b) outweighs the presumption in favor of administrative preclusion. According to the court, the provisions of §§ 626 (d) (2) and 633 (b), when read together, "plainly assume the possibility of federal consideration [of the merits of an ADEA claim] after state agencies have finished theirs." Id., 111. For such consideration to be meaningful, the court reasoned, it must be plenary. "A complainant who looks to a federal court . . . will . . . ordinarily do so only when the state agency has held against him. In such a case, however, the employer would likely enjoy an airtight defense of collateral estoppel if a state agency determination on the merits were given preclusive effect." Id. Application of the doctrine of administrative preclusion to the ADEA would leave the provisions calling for federal consideration "essentially without effect"; id., 112; a result the United States Supreme Court refused to countenance. The *Solimino* decision

therefore further indicates how limited a role the deferral requirement of § 633 (b) plays in the jurisdictional underpinnings of the ADEA.

Federal appellate and district courts have consistently rejected the proposition that § 633 (b) imposes a state exhaustion requirement. In *Curto* v. *Sears, Roebuck & Co.*, 552 F. Sup. 891, 899–900 (N.D. Ill. 1982), for example, the court held that § 633 (b) "makes it very clear that a state agency cannot prohibit an ADEA plaintiff from abandoning state proceedings and suing in federal court. ADEA plaintiffs have an absolute right to file suit sixty days after commencing state proceedings, and, as the last sentence of [§ 633 (b)] and *Oscar Mayer* [*& Co.*] make clear, there is nothing the state can do to stop them. If an ADEA litigant is determined to have his or her day in federal court, he or she will get it." The court concluded by stating that §§ 626 (d) and 633 (b) "mean what they say, no more and no less. A litigant complies with these sections by commencing proceedings under state law, and then waiting sixty days or until state proceedings have terminated to file suit under the [ADEA]. By doing this, the litigant complies with the letter of the statute, and has preserved its underlying goals." Id., 902; see also *Shanahan* v. *WITI-TV, Inc.*, 565 F. Sup. 219, 223 (E.D. Wis. 1982) ("exhaustion of state remedies is not a prerequisite to filing an ADEA action").

The decision of the Second Circuit Court of Appeals in *Goodman* v. *Heublein, Inc.*, 645 F.2d 127 (2d Cir. 1981), is particularly relevant here. In that appeal, arising from an ADEA claim in the United States District Court for Connecticut, the court stated that "the [United States] Supreme Court, construing [§ 633 (b)], has held that an ADEA plaintiff's state filing need not be timely under state law in order to permit him to proceed in federal court. . . . *He need only commence the state action, even though that action is subject to dis-*

*missal because of the late filing.*" (Citation omitted; emphasis added.) Id., 132; see also *Bean* v. *Crocker National Bank*, 600 F.2d 754 (9th Cir. 1979); *Donahue* v. *Pendleton Woolen Mills, Inc.*, 719 F. Sup. 149 (S.D.N.Y. 1988). If an ADEA plaintiff can proceed to federal court even when his or her filing with the state agency is subject to dismissal as being time barred under state law, then a fortiori that plaintiff need not exhaust state administrative remedies as a prerequisite to federal court jurisdiction.

These decisions are consistent with the jurisprudence that has developed under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. The United States Supreme Court has noted that § 633 (b) was modeled after, and is nearly identical to, § 706 (c) of Title VII, 42 U.S.C. § 2000e-5 (c). *Oscar Mayer & Co.* v. *Evans*, supra, 441 U.S. 756. It is well established that § 633 (b) "is to be construed to accord with the similar requirements of § [2000e-5 (c)] . . . ." *Goodman* v. *Heublein, Inc.*, supra, 645 F.2d 131; accord *Equal Employment Opportunity Commission* v. *Shamrock Optical Co.*, 788 F.2d 491, 493 (8th Cir. 1986). When presented with the question of whether § 2000e-5 (c) imposes an exhaustion requirement, the Seventh Circuit Court of Appeals has unequivocally held that it does not. "[T]he Congressional policy of deference to state and local agencies is embodied in the limited form of a 60-day no-action period. Nothing in § 2000e-5 (c) even remotely suggests that state procedures must be *exhausted* before federal action may continue." (Emphasis in original.) *Guse* v. *J. C. Penney, Co.*, 562 F.2d 6, 8 (7th Cir. 1977); see also *New York Gaslight Club, Inc.* v. *Carey*, 447 U.S. 54, 64, 100 S. Ct. 2024, 64 L. Ed. 2d 723 (1980); *Love* v. *Pullman Co.*, 404 U.S. 522, 526, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972) (purpose of deferral under § 2000e-5 [c] is "to give state agencies a prior oppor-

tunity to consider discrimination complaints").[12] Notably, the *Curto* court relied in part on *Guse* in reaching its decision that § 633 (b) does not require exhaustion. See *Curto* v. *Sears, Roebuck & Co.*, supra, 552 F. Sup. 901, and cases cited therein.

We recognize that none of the cases involving an ADEA action in federal court has expressly addressed the question directly before us, namely, whether their interpretation of § 633 (b) applies equally to ADEA claims filed in state court.[13] With one exception, we have found no state court case directly addressing the issues raised in this appeal.[14] Although several other

[12] See also 29 C.F.R. § 1601.13 (b) (2) (iii) (1993) (providing mechanism for EEOC to invoke its sequential jurisdiction over Title VII claim pursuant to 42 U.S.C. § 2000e-5 [b] and [c] after deferral state proceedings have been commenced but have not terminated).

[13] It is significant to note, however, that the procedural history of *Shanahan* v. *WITI-TV, Inc.*, supra, 565 F. Sup. 219, gives rise to an implication that the rule is not limited to ADEA cases in federal court. At the time *Shanahan* was decided, the doctrine of derivative jurisdiction required a state court to have had proper jurisdiction of a case before removal to federal court would be permitted under 28 U.S.C. § 1441. *Doran, Inc.* v. *James A. Green, Jr., & Co.*, 511 F. Sup. 340, 342 (W.D. Mo. 1981); *Dickinson* v. *Chrysler Corp.*, 456 F. Sup. 43, 48 (E.D. Mich. 1978); compare 28 U.S.C. § 1441 (e) (added in 1986) (eliminating requirement that state court have subject matter jurisdiction prior to removal); *Chivas Products Ltd.* v. *Owen*, 864 F.2d 1280, 1286 (6th Cir. 1988). Since subject matter jurisdiction implicates a court's authority to hear a case and cannot be waived, the removal court could act only if it were persuaded that the court from which removal was sought had had proper jurisdiction. See *Doran, Inc.* v. *James A. Green, Jr., & Co.*, supra, 342. When the federal court in *Shanahan* accepted removal of the case, it therefore must have concluded that the Wisconsin court had had jurisdiction over the ADEA claim. To reach that conclusion, the federal court implicitly must have determined that the plaintiff was not required to exhaust state administrative remedies under the Wisconsin Fair Employment Act; Wis. Stat. § 111.31 et seq. (1983–84); prior to initiating his ADEA claim in the state court.

[14] *Cahoon* v. *Alton Packaging Corp.*, 148 Ill. App. 3d 480, 482, 499 N.E.2d 522 (1986), holds "that an Illinois court [must] dismiss an ADEA case unless state administrative remedies have been exhausted." We are not persuaded by that precedent for two reasons. First, the *Cahoon* decision never mentions § 633 (b), nor does it discuss any of the jurisprudence interpreting

state courts have purported to find a state "exhaustion requirement" in the ADEA, a careful reading of those cases reveals that the courts were referring to nothing more than the federal statutory requirements of filing with the state agency and then waiting sixty days before commencing an action. See *Nolan* v. *Otis Elevator Co.*, 102 N.J. 30, 41–44, 505 A.2d 580 (1986); *Patrowich* v. *Chemical Bank*, 98 App. Div. 2d 318, 323, 470 N.Y.S.2d 599 (1984); *Colina* v. *McGraw Construction Co.*, 69 Ohio App. 3d 422, 424–25, 590 N.E.2d 1308 (1990). We have also found no cases on point under the analagous § 706 (c) of Title VII.[15] Notwithstanding the absence of express precedent, however, we are persuaded that § 633 (b) does not require state administrative remedies to be exhausted before an ADEA claim is initiated in state court. The logic of the federal cases concerning federal jurisdiction is persuasive for state court cases as well.

## II

Our conclusion from the federal law of ADEA jurisdiction finds support in the inferences to be drawn from

that provision. Second, the decision rests in large part on that court's understanding that Illinois statutes reflect the "legislature's plain directive that a civil rights claim be prosecuted in the administrative forum before it reaches the court, and that a complaint which invokes a Federal claim is not entitled to preferential treatment in that regard." Id., 483. Connecticut's statutes contain no equivalent directive. See General Statutes §§ 46a-83 and 46a-51 (8).

[15] Until 1990, there was a split of authority, and many courts held that Title VII provides for exclusive federal court jurisdiction, which precluded the issue from arising. Compare *Bradshaw* v. *General Motors Corp.*, 805 F.2d 110 (3d Cir. 1986), *Valenzuela* v. *Kraft, Inc.*, 739 F.2d 434 (9th Cir. 1984), and *Sweeney* v. *Hartz Mountain Corp.*, 78 Md. App. 79, 552 A.2d 912 (1989) (exclusive federal jurisdiction), with *Greene* v. *School Board of Henrico County*, 524 F. Sup. 43 (E.D. Va. 1981), and *Bennun* v. *Board of Governors of Rutgers*, 413 F. Sup. 1274 (D.N.J. 1976) (concurrent jurisdiction). In 1990, however, the United States Supreme Court definitively resolved the issue in favor of concurrent jurisdiction. *Yellow Freight System, Inc.* v. *Donnelly*, 494 U.S. 820, 110 S. Ct. 1566, 108 L. Ed. 2d 834 (1990).

the Congressional decision to confer upon state courts concurrent jurisdiction over ADEA claims. Although Congress was free to choose otherwise; *Gulf Offshore Co.* v. *Mobil Oil Corp.*, 453 U.S. 473, 477–78, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981); it undeniably decided to make state as well as federal courts an available forum for the vindication of federal age discrimination claims.[16] That Congressional decision counsels against imposing a state law exhaustion requirement on the plaintiff's ADEA claim.

We have had occasion to consider the relationship between a federally created cause of action for which federal law does not provide an exhaustion requirement and a state imposed exhaustion requirement, and we have rejected such an imposition. In *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 473 A.2d 1176 (1984), the plaintiff, a former tenured professor at the defendant university, had commenced an action against the university in state court under 42 U.S.C. § 1983. Although the trial court dismissed the case for failure to exhaust administrative remedies; id., 549; we reversed, holding that the United States Supreme Court's decision in *Patsy* v. *Board of Regents*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982), that § 1983 does not require exhaustion of state administrative remedies was not limited to federal court cases.

---

[16] The ADEA provides that subject matter jurisdiction for a federal age discrimination claim is proper "in any court of competent jurisdiction . . . ." 29 U.S.C. § 626 (c). Concurrent jurisdiction over a federally created cause of action is presumed in the absence of some clear indication to the contrary. *Gulf Offshore Co.* v. *Mobil Oil Corp.*, supra, 453 U.S. 477–78. Numerous courts have approved state court jurisdiction over ADEA claims. See, e.g., *Chapman* v. *Detroit*, 808 F.2d 459, 463 (6th Cir. 1986); *Eagleburger* v. *Springfield*, 677 S.W.2d 914, 915 (Mo. App. 1984) (citing H.R. Rep. No. 805, 90th Cong., 1st Sess. [1967]); cf. *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 491 A.2d 1096 (1985) (dismissing ADEA claim for failure to comply with administrative notice requirements). The trial court rejected the defendants' argument in their motion to dismiss that the ADEA provides for exclusive federal jurisdiction over private ADEA actions.

Our reasoning in *Fetterman* is particularly apposite here. "The defendant . . . would seek to limit the holding of [*Patsy*] to § 1983 actions brought only in the federal courts. The incongruous result of such a limited interpretation, however, would be to allow plaintiffs instituting federal court actions to do so without exhausting state administrative remedies, while requiring plaintiffs suing in Connecticut [state] courts to first exhaust such remedies. Since it is clear that claims for liability for deprivation of federal constitutional rights under § 1983 are claims as to which there is concurrent jurisdiction . . . we think that such a limitation on the court's holding is inappropriate." (Citations omitted.) *Fetterman* v. *University of Connecticut,* supra, 549. The same logic applies with equal vigor to the present case.

Adoption of an exhaustion requirement for ADEA claims would result in the same incongruity that we rejected in *Fetterman.* A person who filed an ADEA claim in Connecticut state court would first have to exhaust state administrative remedies and then, if dissatisfied with the outcome, would have to demonstrate, on appeal to the Superior Court, that the adverse findings by the CHRO were clearly erroneous.[17] See General Statutes §§ 46a-94a and 4-183 (j) (5). On the other hand, a person who filed an ADEA claim in federal court would receive full consideration of his or her claim on the merits, even if the CHRO had completed a full administrative process after receiving the required § 633 (b) notice and had denied the claim. *Astoria Federal Savings & Loan Assn.* v. *Solimino,* supra, 501 U.S.

---

[17] Indeed, as the defendants concede, if the CHRO were to determine that a claimant's case has no reasonable cause; see General Statutes § 46a-83 (b); and deny the claimant's motion for reconsideration; see General Statutes § 46a-83 (c); and if the trial court were then to find that the CHRO's findings were not clearly erroneous; see General Statutes § 4-183 (j) (5); the claimant might never receive a hearing on the merits of the age discrimination charge.

110. As in *Fetterman*, we are unpersuaded that Congress, having elected to permit concurrent jurisdiction, intended to permit such unequal treatment for a plaintiff who decided to pursue a claim for the deprivation of a federal right in state court.

This conclusion disposes of the defendants' contention that General Statutes § 46a-83 independently requires a person pursuing an ADEA claim in Connecticut state court to exhaust administrative remedies before the CHRO. Even if we were to find that the CHRO admininistrative process applies to an ADEA claim,[18] the reasoning of *Fetterman* indicates that a state imposed administrative remedy of the type posited by the defendants must be subordinated to a federal statutory right to proceed directly to court to vindicate a federal claim. *Fetterman* v. *University of Connecticut*, supra, 192 Conn. 549.

### III

The time limits that Congress has imposed for the initiation of a private civil action under the ADEA lend further support for our conclusion that the ADEA does not contemplate a state exhaustion requirement. In addition to the 300 day time limit for filing a discrimination charge with the appropriate agencies; 29 U.S.C. § 626 (d) (2); the ADEA sets an absolute time limit of two years after accrual for the commencement of an ADEA action. 29 U.S.C. § 626 (e) (1).[19] If, therefore,

---

[18] The defendants assert that the CHRO administrative process codified at § 46a-83, which purports to apply to "any discriminatory practice complaint," necessarily governs here. We note, however, that § 46a-83 applies only to those "discriminatory practices" enumerated at General Statutes § 46a-51 (8). These "discriminatory practices" do not include a complaint brought under the ADEA.

[19] Title 29 of the United States Code, § 626 (e) (1) incorporates by reference §§ 6 and 10 of the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 255 and 259. Section 255 provides in relevant part: "STATUTE OF LIMITATIONS

"Any action commenced on or after May 14, 1947, to enforce any cause of action . . .

state administrative proceedings were to continue past the two year limitations date, application of an exhaustion requirement would place potential plaintiffs in a Catch-22: a complaint filed before the termination of agency proceedings would be premature, while a complaint filed after the termination of proceedings would be time barred. Either way, the complaint would potentially be subject to dismissal.

The plaintiff in the present case faced precisely this conundrum. The plaintiff was discharged on May 16, 1988. At that time, the two year limitation period contained in § 626 (e) (1) began to run. The plaintiff filed discrimination charges with the EEOC and CHRO on September 19, 1988, within the 300 day limit established in § 626 (d) (2). Thereafter, the plaintiff filed a complaint in Superior Court on February 21, 1990, more than sixty days after the §§ 626 (d) and 633 (b) charges had been filed and within the two year limit of § 626 (e) (1). The CHRO, however, did not issue its finding of no reasonable cause until February 7, 1991, several months after the limitations period would have expired.[20] The plaintiff's request for reconsideration was not denied until June 12, 1991—more than one year after the statute of limitations for filing a private action would have run. See General Statutes § 46a-83 (c). Had

"(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued . . . ."

Title 29 of the United States Code, § 626 (e) (2) does provide for a one year tolling period if the EEOC elects to attempt voluntary conciliation of the discrimination charge, pursuant to § 626 (b). Nowhere, however, does the ADEA set out a comparable tolling provision to accommodate actions by deferral state agencies.

[20] The only count in the revised complaint that charges willful action is count three, which does not state a claim under the ADEA. See footnote 5. Therefore, the plaintiff would not have been entitled to the three year statute of limitations for willful violations of the ADEA. See 29 U.S.C. §§ 626 (e) (1) and 255 (a).

the plaintiff waited to bring his action until after the final decision by the CHRO, the defendants could have invoked the § 626 (e) (1) statute of limitations as a bar to his claim. Yet, when he filed the complaint within the time period prescribed by the ADEA, the defendants moved for its dismissal for failure to exhaust administrative remedies.

Congress cannot have intended to place ADEA plaintiffs in this impossible position when it granted concurrent jurisdiction over ADEA claims. We decline to do so now by reading an exhaustion requirement into the statute. Cf. *State* v. *Metz*, 230 Conn. 400, 420, 645 A.2d 965 (1994) ("[i]n construing a statute . . . we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent"). We hold, therefore, that as a matter of federal law § 633 (b) of the ADEA, while requiring a person pursuing an ADEA claim in Connecticut to file notice of the claim with the CHRO, does not require that person to exhaust administrative remedies before the CHRO prior to initiating a federal age discrimination claim in Connecticut state court.[21]

To summarize, we hold that § 14 (b) of the ADEA, 29 U.S.C. § 633 (b), does not require a litigant to

---

[21] Nothing in our decision in *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 491 A.2d 1096 (1985), is inconsistent with this holding. In *Sullivan*, we were presented with the question whether the defendant had established age as a bona fide occupational qualification under 29 U.S.C. § 623 (f) (1). We dismissed the appeal for lack of subject matter jurisdiction, however, because of the plaintiff's failure to file charges with the EEOC under § 626 (d). Id., 213–14, 217–18. We similarly dismissed the plaintiff's claim under the Connecticut Fair Employment Practices Act (CFEPA) for failure to comply with the administrative procedures set forth in General Statutes §§ 46a-82 through 46a-96. Id., 215–18. Although we referred to § 633 (b) in passing; id., 214–15 n.9; *Sullivan* turned solely on questions of filing initial charges and never reached questions of exhaustion under the ADEA.

The other cases relied upon by the defendants for the proposition that a person bringing an age discrimination claim must exhaust administra-

exhaust state administrative remedies before initiating a federal age discrimination claim in Connecticut state court.[22] In view of this conclusion, the trial court improperly dismissed counts one, two, five and six of the revised complaint for failure to exhaust state administrative remedies. We therefore remand with instructions to reinstate these counts of the plaintiff's revised complaint.[23]

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

tive remedies all arose in the context of CFEPA claims and therefore are not controlling here. See *Atkins* v. *Bridgeport Hydraulic Co.*, 5 Conn. App. 643, 501 A.2d 1223 (1985); see also *Osborn* v. *Rocklen Automotive Parts & Service, Inc.*, 4 Conn. App. 423, 494 A.2d 622 (1985) (disability claim under General Statutes § 46a-60 [a] [1]).

[22] Accordingly, we do not reach the plaintiff's argument that application of an exhaustion requirement would violate the due process guarantee of article first, § 10, of the Connecticut constitution.

[23] The status of counts three and four of the revised complaint has not been briefed and is not before us on this appeal. See footnote 6.