[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs bring this action seeking various relief for the practice in the New Haven fire department known as underfilling. Underfilling in the context of this action occurred when there were several vacancies in the position of captain in the fire department, and no persons on a valid civil service eligibility list for that rank. Taking the money that had been budgeted for those positions, the fire department created ten more lieutenants than the forty-eight allotted in the budget by appointing otherwise eligible firefighters to the rank of lieutenant. Importantly, these ten additional lieutenants, by virtue of their rank, are now eligible to take the captain's examination. The plaintiffs allege that they have no adequate remedy at law and will suffer irreparable harm if the ten additional lieutenants, who received their rank by the practice of underfilling, are allowed to take the captain's examination.
The plaintiffs, Sheryl Broadnax, John R. Brantley and Christopher Texiera, are lieutenants in the New Haven fire department (department). The plaintiffs, Clifford Petteway and Ronald Benson, are firefighters with the department. The plaintiff, Danny Dolphin, is a firefighter/EMT with the department. All of the plaintiffs are African-American. The defendants are the department, the city of New Haven, the board of fire commissioners of the city of New Haven and the civil service commission of the city of New Haven.
The plaintiffs allege that although there are only forty-eight lieutenant positions within the department, fifty-eight lieutenants are in fact employed and are eligible to take the examination for captain. By the practice of underfilling, these additional ten lieutenants "were promoted from valid promotional eligibility lists" to lieutenant slots which do not exist. The plaintiffs claim that underfilling violates the rules and regulations of the New Haven civil service commission, the intent, spirit and letter of the affirmative action plan in effect for CT Page 5885 the city, and the New Haven city charter. The plaintiffs further allege that they have been discriminated against because of their race, that underfilling has had a detrimental and discriminatory effect upon the number of African-Americans hired and promoted within the department, that underfilling has had a disparate impact, and that underfilling "is a manipulative ploy to circumvent promotions based on merit, rank and experience."
The plaintiffs' third amended complaint contains four counts. In the first count, the plaintiffs claim that they have been denied due process and equal protection of laws in violation of 42 U.S.C. § 1981 and1983. In the first count, the plaintiffs also seek a declaratory judgment declaring that the practice of underfilling is illegal and a permanent injunction "forever forbidding the defendants from utilizing the practice of underfilling in allowing candidates within the department to take promotional tests which lead to promotions to positions with respect to which said candidates would not have been otherwise eligible." In the second count, the plaintiffs allege that the practice of underfilling created a hostile work environment and that they were subjected to disparate treatment by the defendants solely because of their race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The third count alleges that the defendants' actions violate article first, §§ 1, 9
and 10, of the constitution of the state of Connecticut. The fourth count alleges that the defendants have intentionally inflicted emotional distress on the plaintiffs.
The defendants have moved to strike the entire complaint based on the following grounds: (1) mandatory notice has not been given for a declaratory judgment and necessary and indispensable parties have not been named; (2) the plaintiffs lack standing because they (a) lack a property interest, (b) failed to exhaust their administrative remedies as to the Title VII civil rights claim, and (c) have failed to allege a direct injury; (3) this lawsuit is not ripe for adjudication; (4) the alleged violations of local laws fail to state a sufficient legal claim and are irrelevant and immaterial; (5) plaintiffs fail to state a legally sufficient claim of a hostile work environment; (6) plaintiffs fail to state a sufficient legal claim under 42 U.S.C. § 1983 for denial of due process of law; (7) plaintiffs fail to state a claim for denial of equal protection under 42 U.S.C. § 1981 and 1983; (8) plaintiffs fail to state a sufficient legal claim of any violations of the Connecticut constitution; (9) plaintiffs fail to a state a claim for retaliation; (10) plaintiffs have failed to state an adequate claim for intentional infliction of emotional distress; (11) the claim for injunctive relief as to the April, 1998 fire captain's examination is moot. The court grants the motion to strike counts two, three and four CT Page 5886 in their entirety and count one with respect to its claim of a violation of 42 U.S.C. § 1981 and 1983.
 I
The defendants' first claim is that the plaintiffs have not given the required notice to third persons to enable the court to render a declaratory judgment and that necessary and indispensable parties have not been joined.
Our rules governing the practice and procedure for declaratory judgments have recently been extensively rewritten, effective January 1, 2000. Formerly, Practice Book (Rev. 1999) § 17-55 (4) provided: "The judicial authority will not render declaratory judgments upon the complaint of any person . . . until all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." (Emphasis added.) Practice Book (Rev. 2000) § 17-56 (b) now provides in pertinent part: "All persons who have an interest in the subject matter of the requested declaratory judgment
that is direct, immediate and adverse to the interest of one or more of the plaintiffs or defendants in the action shall be made parties to the action or shall be given reasonable notice thereof."[1] (Emphasis added.) "This rule is not merely a procedural regulation. It is in recognition and implementation of the basic principle that due process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard."Benz v. Walker, 154 Conn. 74, 77, 221 A.2d 841 (1966).
By the literal terms of Practice Book § 17-56(b), the court must first examine "the subject matter of the requested declaratory judgment." In their claims for relief, the plaintiffs seek a declaratory judgment enjoining the practice of underfilling as utilized within the city of New Haven's fire department. Concededly, this prayer for relief does not expressly seek a declaratory judgment that underfilling is illegal or invalidating the promotions of firefighters elevated because of the practice. However, in the body of their complaint, the plaintiffs state: "Plaintiffs seek a declaratory judgment and permanent injunction forever forbidding the defendants from utilizing the practice of underfilling in the context of allowing candidates within the Department to take promotional tests which lead to promotions to positions with respect to which said candidates would not have been otherwise eligible." Reading this awkward sentence "broadly and realistically rather than narrowly and technically"; Antinerella v. Rioux, 229 Conn. 479,490, 642 A.2d 699 (1994); the plaintiffs apparently seek to prevent the ten lieutenants who obtained their rank because of the practice of underfilling from taking the captain's examination. CT Page 5887
These ten lieutenants have a direct and immediate interest in the subject matter of the declaratory judgment that is adverse to that of the plaintiffs. As a result of a declaratory judgment in this action, these unnamed, unknown persons may be barred from taking the captain's examination and, therefore, barred from promotion to captain and the commensurate increase in salary and other benefits that accompany such a promotion. The declaratory judgment sought by the plaintiffs would indeed be a judgment that is direct, immediate and adverse to these ten lieutenants' interests.
The plaintiffs argue that the interests of the ten additional lieutenants are already adequately represented by New Haven Firefighters Union Local 825 which was recently permitted to intervene. The short answer to this argument is that Practice Book § 17-56 does not except from its requirement of notice or joinder those persons who may already be "adequately represented" by another party. While adequacy of representation may conceivably affect whether such persons should be given party status, it has nothing to do with whether they must be given notice. Moreover, whether the union does adequately represent the interests of all ten of the lieutenants who gained their positions through underfilling is, at this juncture, a matter of speculation as to which no evidence was adduced.
The failure to join necessary and indispensable parties or to give them notice as required by Practice Book § 17-56(b) is no longer deemed jurisdictional. Stafford Higgins Industries, Inc. v. Norwalk,245 Conn. 551, 576-78, 715 A.2d 46 (1998); Serrani v. Board of Ethics,225 Conn. 305, 309-10, 622 A.2d 1009 (1993). Practice Book § 17-56
(c) provides: "Except as provided in Sections 10-39 and 10-44, no declaratory judgment action shall be defeated by the nonjoinder of parties or the failure to give notice to interested persons. The exclusive remedy for non-joinder or failure to give notice to interested persons is by motion to strike as provided in Sections 10-39 and 10-44." Practice Book § 10-39(b) provides: "A motion to strike on the ground of the nonjoinder of a necessary party or noncompliance with Section 17-56 (b) must give the name and residence of the missing party or interested person or such information as the moving party has as to the identity and residence of the missing party or interested person and must state the missing party's or interested person's interest in the cause of action."
The defendants have not complied with this provision. They undoubtedly know the names and addresses of all ten lieutenants who owe their positions to the practice of underfilling, yet they have not named them.[2] The court also is confident that the plaintiffs also know CT Page 5888 the names of these persons. However, because of the defendants' failure to comply with Practice Book § 10-39(b), the court will not grant the defendants' motion to strike on grounds of lack of notice or nonjoinder.
Still, to ignore the issue until another day "would simply set judicial wheels unnecessarily spinning, only to remain at the same end of the road." Chomko v. Patmon, 20 Conn. App. 159, 163, 565 A.2d 250
(1989). This issue will not go away. The defendants correctly claim that necessary and indispensable parties have not been joined. The plaintiffs make clear that they do not wish to join them. Without compliance with Practice Book § 17-56(b), the court cannot fashion meaningful declaratory relief should the plaintiffs prevail. See Benz v. Walker,
supra, 154 Conn. 79-80; Practice Book § 17-56(d). Therefore, the defendants are ordered to advise the plaintiffs promptly in writing of the names and addresses of the ten lieutenants in question; the plaintiffs are ordered to make an appropriate motion to join those persons as parties defendant. Until there is compliance with Practice Book § 17-56(b), the court will not adjudicate the merits of this dispute as presented in the defendants' motion, or otherwise. Serrani v.Board of Ethics, supra, 225 Conn. 309-10.
 II
The defendants claim that the plaintiffs lack standing to maintain the actions alleged in each count, for various reasons.
 A
The court first addresses the defendants' claim that the plaintiffs lack standing to seek a declaratory judgment that the practice of underfilling is illegal because they have failed to allege a direct injury. A motion to strike may be used to challenge the standing of a plaintiff. Alarm Applications, Inc. v. Simsbury Volunteer Fire Co.,179 Conn. 541, 544-46, 427 A.2d 822 (1980); Double I Ltd. Partnership v.Glastonbury, 14 Conn. App. 77, 79, 540 A.2d 81, cert. denied, 208 Conn. 802,545 A.2d 1100 (1988).
"It is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment. . . . A party pursuing declaratory relief must . . . demonstrate, as in ordinary actions, a justiciable right in the controversy sought to be resolved, that is, contract, property or personal rights . . . as such will be affected by the [court's] decision. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise CT Page 5889 justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded.
"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action] . . ." (Citations omitted; internal quotation marks omitted.) Steeneck v.University of Bridgeport, 235 Conn. 572, 579-80, 668 A.2d 688 (1995).
"`Standing requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by allegations of injury. Similarly, standing exists to vindicate "arguably" protected interests.'" (Emphasis in original) Presidential Capital Corp. v. Reale,231 Conn. 500, 505, 652 A.2d 489 (1994), later, 240 Conn. 623, 692 A.2d 794
(1997), quoting Maloney v. Pac, 183 Conn. 313, 321 n. 6, 439 A.2d 349
(1981). A colorable claim is one that would otherwise be sufficient to establish standing; that is, any claim other than one that clearly appears to be immaterial and made solely for the purpose of obtaining standing or one that is wholly unsubstantiated. Chesna v. U.S. Dept. ofDefense, 822 F. Sup. 90, 97 (D.Conn. 1993).
"With these considerations in mind we turn to the allegations of the [plaintiffs' complaint]." Ivey, Barnum O'Mara v. Indian HarborProperties, 190 Conn. 528, 537, 461 A.2d 1369 (1983). The gist of their complaint is that firefighters are being promoted to the ten more positions of lieutenant than exist, and moneys appropriated for captains, which positions are vacant, are being used to pay for those additional lieutenants. The plaintiffs allege that the existence of these ten additional lieutenants poses a threat to the future promotion of other lieutenants because all lieutenants may take the examination to become a captain.
With respect to the non-lieutenant plaintiffs, Benson, Dolphin and Petteway, there is no allegation that they have a specific, personal and legal interest that has been or ever will be injuriously affected. SeeBombero v. Planning Zoning Commission, 40 Conn. App. 75, 84-86,669 A.2d 598 (1996); ASL Associates v. Zoning Commission, 18 Conn. App. 542,559 A.2d 236 (1989); compare Gay Lesbian Law Students Assn. v. Boardof Trustees, 236 Conn. 453, 466-68, 673 A.2d 484 (1996); PresidentialCT Page 5890Capital Corp. v. Beale, supra, 231 Conn. 504-05. The complaint does allege that "[e]ach of the plaintiffs has been discriminated against by the defendants because of their race which is African-American and their color which is Black," but this allegation is completely untethered to anything else in the complaint, and the nature of the discrimination is undisclosed. The plaintiffs do not allege how they have been discriminated against. Specifically, and notably, the plaintiffs do not allege that the practice of underfilling has been utilized to discriminate against them in hiring or promotion, or that they have been denied anything because of the practice of underfilling. If such a claim exists, it should be alleged in a substitute complaint, if that may be done in good faith. See Practice Book §§ 10-5 (good faith pleading),10-44 (right to timely file substitute pleading after prior pleading stricken); cf. Fetterman v. University of Connecticut, 192 Conn. 539,555, 473 A.2d 1176 (1984) ("in order to make a viable claim under § 1985, the complaint must allege invidiously discriminatory, class-based animus and must allege facts showing this invidiousness").
"[O]ur rules of practice require fact pleading"; Emerick v. Kuhn,52 Conn. App. 724, 749 n. 18, 737 A.2d 456, cert. denied, 249 Conn. 929,738 A.2d 653 (1999); not stealth pleading. The plaintiffs' bald, wholly disconnected and conclusory claim of discrimination due to race does not give rise to a colorable claim. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992). Essential allegations may not be supplied by conjecture or remote implication. Cahill v. Board ofEducation, 198 Conn. 229, 236, 502 A.2d 410 (1985). "`The complaint must state facts sufficient to set forth a cause of action entitling the plaintiff to a declaratory judgment. 1 Anderson, Declaratory Judgments (2d Ed.) § 257. To state a cause of action for such relief, facts showing the existence of a substantial controversy or uncertainty of legal relations which requires settlement between the parties must be alleged. Ordinarily, there should be an assertion in the pleadings by one party of a legal relation or status or right in which he has a definite interest, together with an assertion of the denial of it by the other party, thus setting forth a substantial dispute. Id., § 258.'Lipson v. Bennett, [148 Conn. 385, 389, 171 A.2d 83 (1961)]. `Unless, therefore, the complaint recites facts which present a question or issue not determined by the previous decisions, or in relation to which a substantial uncertainty of legal relations remains and requires settlement, no basis for a declaratory judgment has been presented.'Trubek v. Ullman, 147 Conn. 633, 635, 165 A.2d 158, cert. denied,367 U.S. 907, 81 S.Ct. 1917, 6 L.Ed.2d 1249 (1960)." Bombero v. Planning Zoning Commission, supra, 40 Conn. App. 85-86. Also, because the non-lieutenant plaintiffs are not even entitled to take the captain's CT Page 5891 examination, they cannot merely rely on the claim that "the plaintiffs' opportunity to become Captains have been unfairly and adversely affected" by underfilling.
The complaint also alleges: "By and large, the practice of underfilling has had a detrimental and discriminatory effect upon the number of African-Americans, hired and promoted within the Fire Department." The rule, however, is that "no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity." Hillman v. Greenwich,217 Conn. 520, 529, 587 A.2d 99 (1991). The plaintiffs, however, have not brought suit in a representative capacity nor does the quoted allegation allege an individual injury. Compare New Haven FirebirdSociety v. Board of Fire Commissioners, 32 Conn. App. 585, 630 A.2d 131, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993).
The standing of plaintiffs Broadnax and Brantley is on firmer ground. Their claim, as lieutenants, that the opportunity to be promoted to the rank of captain has been unfairly and adversely affected gives rise to a colorable claim of injury. It is true, as the defendants argue, that this claim assumes a contingency that may never reach reality: that the ten lieutenants who obtained their rank by the practice of underfilling will out-score the plaintiffs on the captain's examination. However, "[t]he remedy by means of declaratory judgments is highly remedial and the statute and rules should be accorded a liberal construction to carry out the purposes underlying such judgments. One great purpose is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds, and so avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of law suits. Fully to carry out the purposes intended to be served by such judgments, it is sometimes necessary to determine rights which will arise or become complete only in the contingency of some future happening. Even if the right claimed in this case is a contingent one, its present determination may well serve a very real practical need of the parties for guidance in their future conduct. A construction of our statute and rules which would exclude from the field of their operation the determination of rights, powers, privileges and immunities which are contingent upon the happening or not happening of some future event would hamper their useful operation. Such a construction does not, however, compel the Superior Court to decide claims of right which are purely hypothetical or are not of consequence as guides to the present conduct of the parties." Sigal v. Wise, 114 Conn. 297, 301-02, 158 A. 891
(1932); see also Practice Book § 17-55. A declaratory judgment with CT Page 5892 respect to the practice of underfilling will "avoid the expense, bitterness of feeling and disturbance of the orderly pursuits" of the fire department which may be expected were this or another form of action deferred until after one or more of the "underfilled" lieutenants have passed the captain's examination.
The court concludes that plaintiffs Broadnax and Brantley have alleged a colorable claim of injury from the practice of underfilling. The defendants' motion to strike the declaratory judgment action of those plaintiffs is, therefore, denied.
 B
The defendants next claim that the plaintiffs lack standing to claim a violation of 42 U.S.C. § 1983,[3] as alleged in the first count, because they have not alleged the deprivation of a property interest. The court agrees that the plaintiffs have not adequately alleged a violation of 42 U.S.C. § 1983.
"`To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.' West v. Atkins, 487 U.S. 42, 48,108 S.Ct. 2250, 101 L.Ed.2d 40 (1987); see also Flagg Bros, Inc. v.Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). These two elements denote two separate areas of inquiry: the plaintiff must prove a constitutional or [federal] statutory violation and that violation must have been committed by the defendant acting under color of law." Wilson v. Hryniewicz, 38 Conn. App. 715, 719-20, 663 A.2d 1073, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995).
The plaintiffs allege that they "have been denied due process and/or equal protection of the laws in direct violation of . . .42 U.S.C. § 1983."
 1.
To state a claim under § 1983 for violation of due process, the plaintiffs must allege that they have a recognized liberty or property interest within the purview of the fourteenth amendment of which they have been deprived. Alton v. Texas A M University, 168 F.3d 196, 199
(5th Cir. 1999). Clearly, no liberty interest is implicated here. See, e.g.,Washington v. Glucksberg, 521 U.S. 702, 719-20, 117 S.Ct. 2258,138 L.Ed.2d 772 (1997) (cataloguing various liberty interests beyond the absence of physical restrain which the due process clause protects). Therefore, by simple subtraction, the plaintiffs must allege deprivation CT Page 5893 of a property interest.
"Property interests are more than abstract needs, desires or unilateral expectations of benefits or privileges. Rather, a person must have a legitimate claim of entitlement to a benefit or privilege to have a property interest in that benefit. . . . Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." (Citations omitted; internal quotation marks omitted.) Harkless v. Rowe, 232 Conn. 599, 618,657 A.2d 562 (1995); see Board of Regents v. Roth, 408 U.S. 564, 577,92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
The plaintiffs are municipal employees and have a property right protected by the fourteenth amendment in their continued employment.Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487,84 L.Ed.2d 494 (1985); Board of Regents v. Roth, supra, 408 U.S. 564,577; Sekor v. Board of Education, 240 Conn. 119, 129, 689 A.2d 1112
(1997); Petrowski v. Norwich Free Academy, 199 Conn. 231, 234, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S.Ct. 42, 93 L.Ed.2d 5 (1986); Lee v.Board of Education, 181 Conn. 69, 72, 434 A.2d 333 (1980). However, there is no suggestion that they have been or will be deprived of their employment. Beyond their employment, they have alleged nothing that would suggest that they have a legitimate claim of entitlement either to promotion or to a certain quantum of competition in the Captain's examination. "[N]either the hope for professional advancement nor a unilateral anticipation of possible job-related perquisites gives rise to a constitutionally protected property interest." Hunt v. Prior,236 Conn. 421, 439, 673 A.2d 514 (1996). It is not every violation of state law, nor every illegal municipal promotional procedure, that gives rise to cause of action under § 1983. Cf. Walters v. City of Atlanta,803 F.2d 1135 (11th Cir. 1986); Van Loo v. Braun, 940 F. Sup. 1390,1397 (W.D. Wis. 1996). "If a claimant does not establish a constitutionally protected interest, the due process analysis ceases because no process is constitutionally due for the deprivation of an interest that is not of constitutional magnitude." Hunt v. Prior, supra,236 Conn. 442. Because the plaintiffs have not alleged that they have been deprived of a property right, they have not alleged a legally sufficient due process claim under 42 U.S.C. § 1983. "Because the constitutional guarantees of due process apply only when the state seeks to remove or significantly alter [an individual's] protected status . . . the plaintiff cannot prevail on this claim of a constitutional deprivation." (Citation omitted; internal quotation marks omitted.) Id.,
439.
 2
CT Page 5894
The plaintiffs' equal protection tenet of their § 1983 claim suffers from the same pleading deficiency that plagues the rest of their complaint. The plaintiffs allege that they have been discriminated against because of their race, but do not disclose how.[4] "The concept of equal protection [under both state and federal constitutions] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged. . . ." (Internal quotation marks omitted.) Id.,
443. In another paragraph, the complaint alleges that underfilling has had a disparate impact. However, to make out a cause of action under § 1983 based on violation of equal protection, disparate impact alone will not suffice. Washington v. Davis, 426 U.S. 229, 238-40,96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976); Brown v. City of Oneonta,195 F.3d 111 (2d Cir. 1999); National Association of GovernmentEmployees v. City of Public Service Bd., 40 F.3d 698, 714-15 (5th Cir. 1994) The plaintiffs have failed to allege facts to show that any other similarly situated member of the department has received more favorable or more lenient treatment by the defendants than they have received.
 C
The defendants also seek to strike the first count insofar as it claims a violation of 42 U.S.C. § 1981. 42 U.S.C. § 1981 states in pertinent part: "(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, license, and exactions of every kind, and not other.
"(b) For purposes of this section, the term `make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."
42 U.S.C. § 1981 proscribes discrimination in employment. SeeRivers v. Roadway Express, Inc., 511 U.S. 298, 114 S.Ct. 1510,128 L.Ed.2d 274
(1994); Johnson v. Railway Express Agency, Inc., 421 U.S. 454,95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); Tillman v. Wheaton-HavenRecreational Assn., Inc., 410 U.S. 431, 439-40, 93 S.Ct. 1090,35 L.Ed.2d 403 (1973). For the reasons discussed supra, the plaintiffs' failure to disclose how they are allegedly being discriminated against renders this claim legally insufficient. CT Page 5895
 III
In their second count, the plaintiffs allege that "[a]s a result of the actions of the defendants, the plaintiffs' civil rights, under Title VII, have been substantially abridged." Specifically, in count two, the plaintiffs allege. that underfilling created a hostile work environment and that they "were subjected to disparate treatment by the defendants solely because of their race and color." The defendants move to strike this count because the plaintiffs have failed to allege that they have exhausted their administrative remedies.
"Under Title VII, a litigant must exhaust available administrative remedies in a timely fashion." Briones v. Bunyon, 101 F.3d 287, 289 (2d Cir. 1996). "Filing an administrative complaint with the EEOC is a statutory prerequisite to maintaining a Title VII action in the [federal] district court"; Pikulin v. City University of New York,176 F.3d 598, 599 (2d Cir. 1999); Shah v. New York Dept. of CivilService, 168 F.3d 610, 613 (2d Cir. 1997); or in state court. See, e.g.,Duplessis v. Warren Petroleum, Inc., 672 So.2d 1019, (La.App. 1996);Roache v. District of Columbia, 654 A.2d 1283, (D.C.App. 1995); Benedictv. Xerox Corp., 144 Misc.2d 490, 544 N.Y.S.2d 418 (1989); cf. Joo v.Capitol Switch, Inc., 231 Conn. 328, 650 A.2d 526 (1994) (where plaintiff has exhausted under EEOC, additional exhaustion of state administrative remedy is not required)
In determining whether the plaintiffs have exhausted their administrative remedy, the court is limited to the well pleaded facts of the plaintiffs' complaint. Caltabiano v. Phillips, 23 Conn. App. 258,264, 580 A.2d 67 (1990). Because the plaintiffs have neither alleged that they exhausted their administrative remedies, nor that they need not do so because those remedies fit into an exception to the doctrine, the defendants' motion is granted. Id.[5]
 IV
In their third count, the plaintiffs allege that the defendants' actions constitute clear violations of the plaintiffs' "state constitution rights found within the Connecticut Constitution, including Article First §§ 1, 9 and 10." Article first, § 1 provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." This has been interpreted as having a meaning equivalent to the equal protection clause in the fourteenth amendment to the United States constitution. Zapata v. Burns, 207 Conn. 496, 504,542 A.2d 700 (1988). Thus, for the reasons given above granting the defendants' motion to strike the 42 U.S.C. § 1983 claim, the claim CT Page 5896 under Article First, § 1 of the constitution of Connecticut is stricken.
Additionally, the plaintiffs claim a violation of their rights under article first, § 9. Article first, § 9 of the constitution of Connecticut reads: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." This provision essentially provides a due process guarantee. See State v. Mikolinski,56 Conn. App. 252, 257, 742 A.2d 1264 (1999). In their brief, the plaintiffs claim that "the discriminatory practices of the defendants continue to unwarrantedly and illegally punish the plaintiffs without authority of law." The plaintiffs have failed to plead any facts to warrant such a conclusion and the court finds that § 9 has no application to the plaintiffs' complaint.
The plaintiffs also claim a violation of article first, § 10. Article First, § 10 provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." The due process clause in the state and federal constitutions have essentially the same meaning.Wallingford Staffordshire Commons Assn., Inc. v. StaffordshireAssociates, 42 Conn. Sup., 241, 615 A.2d 188 (1992). Therefore, for the reasons given granting the defendants' motion to strike the plaintiffs'42 U.S.C. § 1983 claim, the claim under Article First, § 10 is also stricken.
In Binette v. Sabo, 244 Conn. 23, 710 A.2d 688 (1998), the Supreme Court created a Bivens-like[6] constitutional tort cause of action for violations of article first §§ 7, 9 of the constitution of the state of Connecticut. This court declines to divine such a constitutional tort in this case. First, as discussed supra, apart from the allegation that underfilling is ultra vires, any other wrong committed by the defendants, in the nature of discrimination or otherwise, is unarticulated and unfocused. Second, in Binette v. Sabo, supra, 244 Conn. 23, there existed no state statutory cause of action to remedy the transgressions complained of. Id., 44-46. "[A]s a general matter, we should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries which the legislature has provided a reasonably adequate statutory remedy. This conclusion accords with the constitutional principle of separation of powers and its requirement for judicial deference to legislative resolution of conflicting considerations of public policy." Kelley PropertyDevelopment, Inc. v. Lebanon, 226 Conn. 314, 339, 627 A.2d 909 (1993). Here, there appears to be just such a state statute — General Statutes § 46a-58.[7] For the foregoing reasons, the defendants' CT Page 5897 motion to strike the third count is granted.
 V
In the fourth count, the plaintiffs claim intentional infliction of emotional distress. Specifically, the fourth count incorporates the allegations of the first count and adds the following allegations: "[A]s a direct consequence of plaintiffs' overt and public opposition to the practice of underfilling, they each have been subjected to ostracization, isolation, verbal degradation and public humiliation, [t]he defendants . . . intended to inflict emotional distress upon the plaintiffs or knew or should have known that emotional distress was a likely result of its/their conduct, [t]he aforedescribed conduct by the defendants was extreme and outrageous and caused the plaintiffs severe emotional distress and trauma, overly burdensome financial hardships, damage to their relationships with their family and friends, as well as damage to their self-esteem and sense of self-worth."
As reflected in the plaintiffs' use of the passive voice in paragraphs 19 and 20 of the fourth count (and as illuminated during oral argument), the harassment, intimidation, ostracization, isolation, verbal degradation and public humiliation of which they complain was allegedly visited upon them not by the defendants but by other firefighters. The "conduct" of the defendants, to which the plaintiffs refer, in the fourth count, is that alleged in the first count. The count alleges only that the defendants have engaged in the practice of underfilling and that "[e]ach of the plaintiffs has been discriminated against by the defendants because of their race. . . ."
In order to state a legally sufficient claim for intentional infliction of emotional distress, the plaintiffs must allege facts sufficient to establish the four separate elements of that tort. SeeSkuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 698, 694 A.2d 788
(1997). "[F]or the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort . . . Whether the defendant's conduct and. the CT Page 5898 plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury. . . ." Bell v. Board of Education, 55 Conn. App. 400, 409, 739 A.2d 321
(1999). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)." (Internal quotation marks omitted.) Id., 212.
Since "[t]he . . . termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress"; Parsons v. UnitedTechnologies Corporation, 243 Conn. 66, 88-89, 700 A.2d 655 (1997); it can hardly be claimed that a promotional practice such as underfilling, even if ultra vires, is sufficiently extreme and outrageous to give rise to the tort of intentional infliction of emotional distress.
As observed supra, the plaintiffs also allege that they have been discriminated against by the defendants because of their race. Racial discrimination may obviously give rise to a claim of intentional infliction of emotional distress. See, e.g., State v. Local 387 ofCouncil 4 AFSCME, AFL-CIO, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 579805 (February 19, 1999, Lavine, J.), aff'd., 252 Conn. 467,747 A.2d 480 (2000) (the use of racial epithets can support a claim for intentional infliction of emotional distress because the use of such language can involve extreme and outrageous intentional invasions of one's mental and emotional tranquility. See also Alcorn v. Anbro Engineering, [2 Cal.3d 493, 498-99,86 Cal.Rptr. 88, ] 468 P.2d 216 (1970); Contreras v. Crown ZellerbachCorp., [88 Wash.2d 735, 565 P.2d 1173 [1173-77] (1977).]; Denault v.Connecticut General Life Ins. Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 050418 (June 29, 1999, Corradino,J.); Nwachukwu v. State Dept. of Labor, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 573595 (Mar. 4, 1998, Hennessey, J.); see annot., 40 A.L.R.3d 1290, 1318 § 8 (1971) "Recovery of Damages for Emotional Distress Resulting from Racial, Ethnic, or Religious Abuse or Discrimination."[8] "In those cases where the courts have held that there was a question of material fact as to whether behavior was sufficiently extreme or outrageous to give rise to an intentional tort," however, "the circumstances have been particularly egregious." Finucane v. Dandio, Superior Court, judicial district of New Haven, Docket No. 366182 (Feb. 26, 1999). Here, as discussed supra, the claim of discrimination is made in conclusory fashion, without explanation and is seemingly unrelated to anything else CT Page 5899 in the. count. In addition to not knowing whether the discrimination was in failing to hire, promote, in affording benefits or in some other way the reader does not know whether the discrimination was accompanied by racial epithets; see State v. Local 387 of Council 4 AFSCME, AFL-CIO,
supra, Superior Court, Docket No. 579805; or other egregious conduct.
The defendants' motion to strike is denied with respect to the cause of action of Broadnax and Brantley in the first count for a declaratory judgment. The motion to strike is otherwise granted.
BY THE COURT
 Bruce L. Levin Judge of the Superior Court